

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No.  23-00362 |
| ATH SPORTS NUTRITION, LLC, | (Chapter 11) (Subchapter V) |
| Debtor and debtor-in-possession. | <u>Confirmation Hearing</u><br>Date:    September 18, 2023<br>Time:   2:00 p.m.<br>Judge:  Hon. Robert J. Faris |
| | [Related to dkt. ## 79, 86, 87] |

**ORDER CONFIRMING SMALL BUSINESS DEBTOR'S FIRST
AMENDED PLAN OF REORGANIZATION; EXHIBIT A**

The hearing (the "Confirmation Hearing") on confirmation of the *Small*

*Business Debtor's First Amended Plan of Reorganization* [ECF No. 88] (as

supplemented, modified or amended herein, together with all schedules and exhibits

1

thereto, the "Plan")[1], filed by ATH Sports Nutrition, LLC, the above-captioned debtor (the "Debtor"), was held on September 18, 2023 at 2:00 p.m. before the Honorable Robert J. Faris, United States Bankruptcy Judge for the District of Hawaii ("Court"). Appearances are noted in the record.

The Court having considered all of the pleadings supporting the Plan, including: (i) the *Small Business Debtor's Plan of Reorganization* [ECF No. 79]; (ii) the Debtor's *Plan Supplement for Small Business Debtor's Plan of Reorganization* [ECF No. 86] (the "Supplement"); (iii) the *Small Business Debtor's First Amended Plan of Reorganization* [ECF No. 88]; and (iv) the *Declaration of Stuart Kaunaloa Kam in Support of Confirmation of Small Business Debtor's First Amended Plan of Reorganization* (the "Declaration"), all of the evidence adduced and arguments of counsel presented at the Confirmation Hearing, and all of the objections to the Plan, including: the *United States Trustee's Objection to Debtor's Small Business Plan of Reorganization* [ECF No. 87] ("UST Objection"); and the Debtor having addressed the UST Objection in its Confirmation Brief and Declaration by incorporating clarifying or confirming language into this order ("Confirmation Order") as modifications to the Plan, or were otherwise resolved or overruled; and based on the record of all proceedings had before the Court in this Chapter 11 Subchapter V Case

---

[1] Capitalized terms not specifically defined herein shall have the meaning set forth in the Plan.

2

(the "Chapter 11 Case"), the arguments and representations of counsel and the Plan being modified pursuant to the provisions hereof, which modifications do not require re-solicitation of votes, and the Court having made its *Findings of Fact and Conclusions of Law In Support of Confirming Small Business Debtor's First Amended Plan Of Reorganization* ("Confirmation Findings and Conclusions")[2], entered herewith and incorporated into this Confirmation Order, in which it found that all of the requirements for Confirmation of the Plan under the Bankruptcy Code have been satisfied; and the Court having found and determined that the Plan is in the best interests of the Debtor and its estate; and that notice of the Plan and the Confirmation Hearing was fair, reasonable and adequate under the circumstances; and good cause appearing; and after due deliberation and sufficient cause appearing therefor,

**NOW, AFTER DUE DELIBERATION, THE COURT HEREBY ORDERS, ADJUDGES AND DECREES that:**

1.      The Plan, which is annexed hereto as **<u>Exhibit A</u>** and incorporated herein by reference, is confirmed, as modified herein, pursuant to 11 U.S.C. § 1191(a).

---

[2] To the extent that any provisions designated herein as a finding of fact is more properly characterized as a conclusion of law, it is adopted as such. To the extent that any provision designated herein as a conclusion of law if more properly characterized as a finding of fact, it is adopted as such.

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed 09/25/23   Page 3 of 99

2.     All objections, limited objections and responses to confirmation of the Plan, shall be, and hereby are, overruled, unless such objection is expressly incorporated herein.

3.     Section 9.54 is deleted in its entirety and replaced with the following:

> **"First Distribution Date"** means the date identified in any notice of Effective Date which shall be the first date of quarterly installment payments under this Plan.  The First Distribution Date shall fall no later than January 10, 2024.

4.     None of Stuart Kam's personal debts (including the debts he personally guaranteed relating to the Debtor) are being released, discharged or otherwise impaired under the Plan.

## PLAN IS BINDING

5.     The amounts, priorities, secured status, and classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan, unless otherwise clarified or modified by this Confirmation Order.

6.     The Plan and its provisions shall be binding upon the Debtor and its successors, including Reorganized Debtor, any entity acquiring or receiving property or a distribution under the Plan, and any Holder of an Administrative Claim or Claim against or Equity Interest in the Debtor, including all federal, state, and local governmental entities and fiscal intermediaries thereof, whether or not (i) the Administrative Claim, Claim, or Equity Interest of such Holder is impaired under

4

the Plan, (ii) such Holder or entity has accepted the Plan, or (iii) such Holder or entity has filed a proof of claim, demand for payment, or appeared in this Chapter 11 Case.

7.     Except as otherwise provided herein or under the Plan, in accordance with 11 U.S.C. § 1141(c), any property transferred under or otherwise dealt with by the Plan is free and clear of all Claims and Interests.

## AUTHORIZATIONS

8.     The Debtor or the Reorganized Debtor, as appropriate, and its directors, officers, partners, members, managers, agents, and attorneys are each hereby authorized and empowered, and where required by the Plan or this Confirmation Order, ordered to: (a) take such actions as may be necessary or appropriate to execute, implement and consummate the Plan or this Confirmation Order; (b) issue, execute, deliver, file and record such contracts, instruments, releases, agreements, documents, and securities referred to in the Plan or this Confirmation Order, or required to implement and consummate the Plan or give effect to this Confirmation Order pursuant to its terms; (c) perform under and comply with the terms of the Plan and this Confirmation Order; and (d) to take any or all corporate, partnership or limited liability company actions authorized to be taken pursuant to the Plan or this Confirmation Order, or pursuant to any contract, instrument, release, agreement, document or security in connection therewith, or other document, whether or not

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 5 of 99

specifically referred to in the Plan or this Confirmation Order.  Upon execution, all such documents shall be valid and binding, as necessary or appropriate, be accepted by each of the respective state filing offices and recorded in accordance with applicable state law, and become effective in accordance with their terms.

9.      Pursuant to Bankruptcy Code section 1146(a) and this Confirmation Order: (a) the issuance, transfer, or exchange of any notes or equity securities under the Plan; or (b) the creation of any mortgage or other security interest in furtherance of, or in connection with, the Plan shall not be subject to any stamp tax, recording tax, conveyance tax, personal property transfer tax, real estate transfer tax, sales or use tax, or other similar tax.  The Debtor or Reorganized Debtor is hereby authorized to serve upon all filing and recording officers a notice in connection with the filing and recording of any such documents in accordance with the Plan, to evidence and implement this paragraph.  The appropriate state or local government filing and recording officers are hereby directed to accept for filing or recording all documents of transfer to be filed and recorded in accordance with this Plan and the exhibits thereto, without payment of any such tax or government assessment, and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than this Confirmation Order.  The Bankruptcy Court retains jurisdiction to enforce the foregoing direction, by contempt proceedings or otherwise.

10.    Any Liens granted under the Plan shall be deemed perfected without recordation, the same as though recorded, without any further action required of the person to whom such Lien is granted under the Plan.

## BAR DATES

11.    Except as otherwise provided herein, unless previously filed, allowed or paid, requests for payment of Administrative Expense Claims (other than Ordinary Course Administrative Claims) must be filed and served on the Debtor no later than the first Business Day that is thirty (30) days after the Effective Date (the "General Administrative Claims Bar Date"); provided, however, that the General Administrative Claims Bar Date may be extended from time to time upon the mutual agreement of Reorganized Debtor and the applicable Holder of an Administrative Expense Claim, or pursuant to an order of the Bankruptcy Court.  Holders of Administrative Expense Claims that are required to file a request for payment of such Administrative Expense Claims and that do not file such a request by the applicable Administrative Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtor, and such Administrative Expense Claims will be deemed discharged as of the Effective Date.  Unless extended by the Bankruptcy Court or by agreement of the Reorganized Debtor and the filing party, objections to such requests must be filed and served by not later than

7

fourteen (14) days after the filing of the applicable request for payment of Administrative Expense Claims.

12.     Professionals or other Persons asserting a Professional Fee Claim for services rendered to the Estate before the Effective Date must file and serve on Reorganized Debtor an application for final allowance of such Professional Fee Claim, as it relates to services provided to the Estate prior to the Effective Date, no later than the first Business Day that is sixty (60) days after the Effective Date ("Professional Fee Claims Bar Date"). Unless extended by the Bankruptcy Court, objections to any Professional Fee Claim must be filed and served by no later than fourteen (14) days after the filing of the applicable request for payment of the Professional Fee Claim. If a request for payment of a Professional Fee Claim is not made by the applicable Professional Fee Claim Bar Date, such claim will be forever barred and such Professional Fee Claims will be deemed discharged as of the Effective Date. Professionals may obtain payment of reasonable fees and expenses incurred subsequent to the Effective Date for the preparation and prosecution of an application for final allowance of a Professional Fee Claim by submitting an invoice to Reorganized Debtor on or after the date that the Bankruptcy Court enters an order granting such application; provided, however, that (a) Reorganized Debtor shall have the right to object any such invoice, (b) to the extent that Reorganized Debtor and the applicable Professional are unable to resolve any such objection, the matter

8

may be set for hearing before the Bankruptcy Court on not less than thirty (30) days' notice, and (c) Reorganized Debtor shall not be required to pay any particular fees and expenses that are the subject of an unresolved objection unless and until the Bankruptcy Court so orders.

## **VESTING OF ASSETS**

13.     Except as otherwise provided in the Plan or this Confirmation Order, the confirmation of the Plan vests all of the property of the Debtor's estate, including, in addition to the property specified in 11 U.S.C. § 541, all property of the kind specified in that section that the Debtor or Reorganized Debtor acquires, as well as earnings from services performed by the Debtor or Reorganized Debtor, after the date of commencement of this Chapter 11 Case but before it is closed, dismissed or converted to a case under chapter 7, 12 or 13 of the Bankruptcy Code, whichever occurs first, in Reorganized Debtor on the entry of this Confirmation Order.  Except as provided in 11 U.S.C. § 1185, the Plan or the Confirmation Order, the Debtor shall remain in possession of all property of the estate.

## **ESTATE CAUSES OF ACTION**

14.     On the Effective Date, Reorganized Debtor shall have the full power and authority to prosecute, compromise or otherwise resolve any and all claims and causes of action, including but not limited to, all claims and causes of action arising under or related to the Bankruptcy Code.

9

15.     As of the Effective Date, the Reorganized Debtor shall have authority to investigate, administer, monitor, implement, litigate and settle all disputed or unresolved Claims and Administrative Expense Claims.  Nothing herein shall preclude or limit the right or authority of any other party in interest with standing under the Bankruptcy Code to object to any Claim or Administrative Expense Claim.

## EFFECTIVE DATE AND DISCHARGE

16.     The Effective Date, as set forth in Section 9.45 of the Plan, shall occur on the first Business Day after the date the Confirmation Order becomes a Final Order.  As soon as practicable after the Effective Date, the Debtor shall file a Notice of Effective Date identifying the Effective Date and indicating that it has occurred. Post confirmation, the Reorganized Debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report through the Effective Date.

17.     Pursuant to Section 1181(a) (making Section 1141 applicable except for 1141(d)(5)), and 1191(a) (consensual plan), the Debtor's discharge under the Bankruptcy Code, the Plan, and this Order shall occur on the Effective Date.  Except as provided in the Plan or this Confirmation Order, as of the Effective Date the rights afforded under the Plan and the treatment of Claims, Administrative Expense Claims and Equity Interests under the Plan will be in exchange for an in complete satisfaction, discharge and release of all Claims, Administrative Expense Claims and Equity Interests, including any interest accrued on claims against the Debtor from

10

the commencement of the Chapter 11 Case. As of the Effective Date, except as provided in the Plan or this Confirmation Order, the Debtor shall be discharged from all Claims, Administrative Expense Claims or other debts that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (c) the Holder of a Claim or Administrative Expense Claim based on such debt has accepted the Plan.

18. As of the Effective Date, except as provided in the Plan or in this Confirmation Order, all persons shall be precluded from asserting against Reorganized Debtor, any other or further Claims, Administrative Expense Claims, debts, rights, causes of action, liabilities, or equity interests of the Debtor, based on any act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

19. The assumption and assignment and, as appropriate, cure of assumed executory contracts, as provided for under the Plan, pursuant to Bankruptcy Court section 365, as of the Effective Date, is hereby approved. Specifically, the Debtor is hereby authorized to assume the (i) Manufacturing Supply Agreement by and between the Debtor and Maple Mountain Co-Packers, LLC dated as of November

11

23, 2022; and (ii) Fulfillment Pricing Rate Schedule by and between the Debtor and ShipNetwork Effective As of February 1, 2023.

20.    The rejection of any executory contracts and unexpired leases as provided for under the Plan is hereby approved pursuant to Bankruptcy Code sections 365 and 1123(b)(2).  Each party to any rejected executory contract or unexpired lease shall file any claim for damages arising from that rejection not later than thirty (30) days after entry of the Confirmation Order or thirty (30) days after entry of an order rejecting such contract, whichever occurs first.

## EXCULPATION, INDEMNITIES AND INJUNCTIONS

21.    The scope of liability, release, exculpation, and injunction provisions contained in the Plan (including but not limited to Sections 6.10, 6.11, and 6.12) shall be binding upon all persons and entities to the full extent provided in the Plan, except as otherwise provided for herein.  For the avoidance of doubt, Section 6.12 (Injunction) shall not enjoin any entity(s)/person(s) who have held, hold, or may hold Claims against the Debtor from commencing or continuing in any manner any suit, action, proceeding, claim, liability, or obligation against Stuart Kam solely on account of his personal debts owed to such entity(s)/person(s) (including the debts he personally guaranteed relating to the Debtor).

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 12 of 99

## ENFORCEABILITY

22.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

23.     Each term and provision of the Plan is hereby deemed to be valid and enforceable pursuant to its terms, except as modified by this Order.

## OTHER MATTERS

24.     From and after the Effective Date, any notice to be provided shall be sufficient if provided to (a) the list of creditors as required under Bankruptcy Code 2002; or (b) all parties whose rights may be affected by the action which is the subject of the notice, and such notice is approved as sufficient by order of this Court.

25.     Pursuant to Section 1183(c)(1) of the Bankruptcy Code, the service of the Subchapter V Trustee in the Chapter 11 Case shall terminate when the Plan has been substantially consummated, except that the United States Trustee may reappoint a trustee as needed for performance of duties under sections 1183(b)(3)(C) and 1185(a) of the Bankruptcy Code.

26.     Not later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file with the Court and serve on the Subchapter V Trustee, the United States Trustee and all creditors and parties in interest, notice of such substantial consummation of the Plan.

13

27.    If the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan and any document or agreement executed pursuant to the Plan shall be null and void in all respects, except as expressly set forth therein as surviving the nonoccurrence of the Effective Date.  In the event the Effective Date does not occur, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan shall: (a) constitute a waiver or release of any Claims or Interest by, in or against the Debtor or any person; (b) prejudice in any manner the rights of the Debtor, a creditor, or any person; (c) constitute an admission of any sort of the Debtor or any person; or (d) be construed as a finding of fact or conclusion of law with respect thereto.

28.    Notwithstanding confirmation of the Plan or the occurrence of the Effective Date, and in addition to the provisions set forth in Section 6.4 of the Plan for retention of jurisdiction thereunder, which provisions are incorporated herein by reference, this Court hereby retains exclusive jurisdiction over all matters arising out of, and related to, this Chapter 11 Case, the Plan and this Confirmation Order, to the fullest extent permitted by law, as may be necessary or useful to aid in the confirmation and consummation of the Plan and its implementation, including but not limited to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and/or Confirmation Order and to resolve any disputes arising from implementation of the Plan/or Confirmation

14

Order; (ii) to rule on any modification of the Plan proposed under section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases; and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

29.　　The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent.

30.　　The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision, it being the intent of the Court that the Plan, including all exhibits thereto, is confirmed in its entirety, except as otherwise expressly modified in this Confirmation Order, and incorporated herein by reference.

31.　　To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms contained in this Confirmation Order shall govern.　The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated otherwise by further order of this Bankruptcy Court.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 15 of 99

Approved as to form:


/s/ *Neil J. Verbrugge*
Neil J. Verbrugge, Esq.
Counsel for Office of U.S. Trustee

/s/ *Susan Tius*
Susan Tius, Esq.
Counsel for Trustees of the Estate of
Bernice Pauahi Bishop,
doing business as Kamehameha Schools



Submitted by:
CHOI & ITO,
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
E-mail: cchoi@hibklaw.com; aito@hibklaw.com

PASHMAN STEIN WALDER HAYDEN, P.C.
JOSEPH C, BARSALONA II
RICHARD C. SOLOW
1007 North Orange Street, 4th Floor, Suite 183
Wilmington, DE 19801-1242
Telephone: (302) 592-6496
E-mail: jbarsalona@pashmanstein.com; rsolow@pashmanstein.com

Attorneys for ATH SPORTS NUTRITION LLC
Debtor and Debtor-in-Possession

# EXHIBIT A

PASHMAN STEIN WALDER
HAYDEN, P.C.
1007 North Orange Street, 4th Floor, Suite 183
Wilmington, DE 19801-1242
Telephone: (302) 592-6496
Email: jbarsalona@pashmanstein.com
        rsolow@pashmanstein.com

CHOI & ITO
Attorneys at Law
ALLISON A. ITO
700 bishop street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: aito@hibklaw.com

*Counsel to the Debtor and Debtor in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| In re | Case No. 23-00362 |
| ATH SPORTS NUTRITION LLC, | (Chapter 11) (Subchapter V) |
| Debtor and<br>Debtor-in-Possession. | |

**SMALL BUSINESS DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION**

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of **ATH SPORTS NUTRITION LLC** (the "Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST FILE AND SERVE ANY OBJECTIONS TO THE PLAN, NO LATER THAN September 4, 2023.** Please refer to the accompanying notice of the Confirmation Hearing for specific requirements regarding the form and nature of objections to confirmation of the Plan.

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY September 4, 2023, AT 5:00 p.m. HAWAII STANDARD TIME (the "Balloting Deadline"). THE BALLOT MAY BE RETURNED VIA EMAIL TO LSALCEDO@PASHMANSTEIN.COM OR MAILED TO THE FOLLOWING ADDRESS:**

**Pashman Stein Walder Hayden, P.C.**
**Court Plaza South, East Wing**
**21 Main Street, Suite 200**
**Hackensack, NJ 07601**
**Attn: Leslie Salcedo**

Ballots received after the Balloting Deadline, and ballots returned directly to the Debtor, the Bankruptcy Court, or any entity other than the Ballot Tabulator, will not be counted in connection with confirmation of the Plan.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR September 18, 2023, AT 2:00 p.m. IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF HAWAII, 1132 BISHOP STREET, SUITE 250, HONOLULU, HI 96813.**

**THE CONFIRMATION HEARING WILL BE CONDUCTED <u>REMOTELY VIA ZOOM</u>.**

Please refer to the accompanying notice of the Confirmation Hearing for Zoom connection information.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

# TABLE OF CONTENTS

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**....................3
**ARTICLE 1**.................................................................................................................4
    **HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**...............4
        **1.1.**   **Nature of the Debtor's Business.**.............................................4
        **1.2.**   **History of Business Operations of the Debtor** ............................5
        **1.3**    **Filing of the Debtor's Chapter 11 Case.**......................................5
        **1.4.**   **Legal Structure and Ownership.** ...................................................6
        **1.5.**   **Debtor's Assets.** ..................................................................................6
        **1.6.**   **Debtor's Liabilities.** .......................................................................6
        **1.7.**   **Current and Historical Financial Conditions.**............................6
        **1.8.**   **Events Leading to the Filing of the Bankruptcy Case.** ...............7
        **1.9.**   **Significant Events During the Bankruptcy Case.**..........................8
**ARTICLE 2**.................................................................................................................9
    **THE PLAN**......................................................................................................9
        **2.1.**   **Unclassified Claims.**.......................................................................10
        **2.2**    **Classes of Claims and Equity Interests.** .....................................14
        **2.3.**   **Claim Objections** ............................................................................17
        **2.4.**   **Treatment of Executory Contracts and Unexpired Leases.** .......17
        **2.5.**   **Means for Implementation of the Plan.**........................................18
        **2.6.**   **Payments.** .........................................................................................18
        **2.7.**   **Post-Confirmation Management.** .................................................18
        **2.8.**   **Tax Consequences of the Plan.**.....................................................18
        **2.9.**    **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan** ............................................................................21
**ARTICLE 3**...............................................................................................................21
    **FEASIBILITY OF PLAN**...........................................................................21
        **3.1.**   **Ability to Initially Fund Plan.** .....................................................21
        **3.2.**   **Ability to Make Future Plan Payments And Operate Without Furter Reorganization.** .............................................................................21
**ARTICLE 4**...............................................................................................................22
    **LIQUIDATION ANALYSIS.**....................................................................22
**ARTICLE 5**...............................................................................................................22
    **DISCHARGE.**................................................................................................22
        **5.1.**    **Discharge.**.......................................................................................22
**ARTICLE 6**...............................................................................................................23
    **GENERAL PROVISIONS.**.........................................................................23
        **6.1.**   **Title to Assets.** ................................................................................23
        **6.2.**   **Binding Effect.** ...............................................................................23
        **6.3.**   **Severability.** ...................................................................................24
        **6.4.**   **Retention of Jurisdiction by the Bankruptcy Court.** .................24
        **6.5.**   **Captions.**.........................................................................................24
        **6.6.**   **Modification of Plan.**.....................................................................24
        **6.7.**     **Final Decree** ..............................................................................25

i

|       | 6.8   | Default; Accelerated Judgment | 25 |
|-------|-------|-------------------------------|----|
|       | 6.9   | Compromise and Settlement of Claims and Controversies | 25 |
|       | 6.10  | Releases by the Debtor        | 26 |
|       | 6.11  | Exculpation                   | 26 |
|       | 6.12  | Injunction                    | 27 |
|       | 6.13  | Term of Injunctions or Stays  | 28 |

**ARTICLE 7** .......................................................................... 28

    **ATTACHMENTS** ........................................................... 28

**ARTICLE 8** .......................................................................... 29

    **FREQUENTLY ASKED QUESTIONS** ....................... 29

**ARTICLE 9** .......................................................................... 31

    **DEFINITIONS** ............................................................... 31

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 21 of 99

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Under the Plan, the Debtor will devote all of its projected Disposable Income toward the payment of Creditors. The Plan will be funded with the funds that are not for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor. The Plan provides for payment of Administrative Expense Claims, Priority Tax Claims, and Allowed Secured Claims in accordance with the Bankruptcy Code, and projects payment to Allowed General Unsecured Claims. Finally, Holders of Equity Interests will retain their Equity Interests as they existed on the Commencement Date.

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 22 of 99

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business.

ATH Sports Nutrition LLC ("ATH" or the "Debtor") is a direct-to-consumer ("DTC") manufacturer of work out supplements, made from some of the cleanest, high-quality natural ingredients available.

In crafting its high-quality products, the Debtor:
- quarantines raw materials while vendor documentation is verified;
- tests samples of the raw materials for microbiological contaminants;
- blends the raw materials into powders;
- tests samples of the powders for microbiological contaminants, gluten, and allergens;
- fills the powders into a tank where it travels to a hopper;
- places the powered products into sterilized jars; and
- places the completed product through a metal detector, which is then capped and cleaned prior to being labeled.

A visual representation of the Debtor's product lifeline is below:

4



**BUILDING HEALTHIER ATHLETES**

At ATH, we exist to build healthier athletes. We're committed to providing you with the cleanest, highest quality natural supplements. It begins with receiving & testing raw materials, all the way to getting our finished products in your hands to help you crush your goals.







| RECEIVING | BLENDING | PACKAGING |
|---|---|---|
| Raw materials are quarantined while vendor documentation is verified and samples are tested for microbiological contaminants. | Samples are taken after blending raw materials together and tested for microbiological contaminants, gluten, and allergens. The production area is also surface tested for ATP to monitor for any microorganism growth. | Powders are filled into a tank where it travels to a hopper. Sterilized jars are then filled with powdered product. Product is passed through a metal detector, capped, and cleaned prior to being labeled. Samples are retained from each batch. |

**BANNED INGREDIENTS LIST**

Our products will never contain artificial sweeteners, artificial flavors, artificial coloring or any of these potential harmful ingredients. That way you can feel confident about what you're putting in your body. See our full banned ingredient list here.

## 1.2.  History of Business Operations of the Debtor

ATH was founded in 2012 to provide natural sports nutrition made from real foods.  From a meager start, ATH grew steadily and was profitable from 2014 to 2019.  The COVID-19 pandemic ("COVID-19") and the consumer shift to eCommerce led to increased demand for ATH products with sales reaching nearly $2,000,000 in 2021, a strong brand presence in Hawaii, and strengthening national awareness.

## 1.3  Filing of the Debtor's Chapter 11 Case.

On May 15, 2023, the Debtor filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii. On May 16, 2023, the United States Trustee appointed Kevin Lam to serve as the Subchapter V trustee (the "Subchapter V Trustee") in this case pursuant to Bankruptcy Code section 1183(a).  No other trustee, examiner, or official committee has been appointed in this case.

5

### 1.4. <u>Legal Structure and Ownership.</u>

The Debtor is a single member Limited Liability Company formed under Hawaii law, with no parent or subsidiary entity in its corporate structure. Stuart Kaunaloa Kam ("<u>Kam</u>"), the Debtor's founder, owns 100% of the Debtor.

### 1.5. <u>Debtor's Assets.</u>

The Debtor filed detailed Schedules with the Bankruptcy Court on June 14, 2023 [Docket No. 63]. The Schedules set forth all of the Debtor's assets and liabilities as of the Petition Date. The Debtor's assets include cash, accounts receivable, and intellectual property.

### 1.6. <u>Debtor's Liabilities.</u>

As of the date hereof, the General Claims and Governmental Claims Bar Dates have run.

As of the Petition Date, the Debtor has approximately $520,316.70 in secured debt held by the Small Business Administration (the "<u>SBA</u>") in the form of a COVID-19 Economic Injury Disaster Loan (the "<u>EIDL Loan</u>"). Under the terms of this Plan, the Debtor will reinstate the EIDL Loan in full.

Additionally, as of the date hereof, purported (i) Priority Tax Claims asserted against the Debtor total $5,475.70, and (ii) General Unsecured Claims asserted against the Debtor total $767,609.78. The Debtor intends to conduct a claims reconciliation process after Confirmation.

### 1.7. <u>Current and Historical Financial Conditions.</u>

The Debtor's annual gross sales for the period 2019 – 2022 are summarized below:

| Year | Annual Gross Sales |
|------|--------------------|
| 2019 | $637,756 |
| 2020 | $1,331,471 |
| 2021 | $1,641,886 |
| 2022 | $1,327,901 |

The Debtor's financial condition is reflected in the Debtor's most recently filed

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 25 of 99

monthly operating report, attached hereto as **Exhibit A**. A summary of the Debtor's monthly operating reports filed since the commencement of the Debtor's bankruptcy case is as follows:

| Month | Receipts | Distributions |
|-------|----------|---------------|
| May 15-31, 2023 | $71,076.85 | $75,691.60 |
| June 2023 | $97,879.58 | $127,476.53 |

As of August 1, 2023, the Debtor had approximately $47,100.43 in cash. The Debtor is current on its administrative obligations.

## 1.8. Events Leading to the Filing of the Bankruptcy Case.

Although 2021 was a year of significant growth and success, ATH experienced simultaneous headwinds due to the underperformance of one main contractor, Lief Labs LLC ("Lief Labs"). This underperformance ultimately caused a loss of customers, sales, momentum, and ultimately cash flow, which put ATH in its prepetition state.

ATH had always been a loyal customer of Lief Labs. From ATH's bootstrapped beginnings, ATH had never missed a payment during its ten (10) year relationship with Lief Labs. However, due to Lief Lab's inability to abide by the terms of their service agreement with ATH, the Debtor's business suffered.

Beginning in 2021, Lief Labs cost ATH exorbitant amounts of business due to production delays with numerous manufacturing runs exceeding sixteen (16) weeks, twice the time of a normal production run of eight (8) weeks. Some production runs were delayed for over a year. Despite that delay, Lief Labs insisted that ATH was obligated to accept products at full price. These massive delays: (1) cost ATH to lose numerous customers; (2) severely impacted marketing efforts; and (3) negatively affected cash flow.

ATH's marketing costs greatly increased due to ATH's best sellers being out of stock of products for over a year. Those large delays also caused ATH to lose momentum with its customer base. Once inventory was restored, ATH needed to spend more on advertising, at decreased efficiency, to acquire customers and build back demand.

In addition to the aforementioned production delays, Lief Labs also had numerous production errors such as incorrect labeling, incorrect scoop sizes, incorrect jar sizes, and faulty product seals. Those errors negatively impacted ATH's

7

brand, causing the loss of numerous customers and impacting marketing efforts. Lief Labs was unwilling to correct those errors, insisting that ATH would have to incur more delays by returning the faulty products and wait for re-packaging.

Lief Labs also forced ATH to absorb increased pricing without proper notice, while simultaneously dramatically increasing minimum order quantities ("MOQ"), which severely impacted cash flow. If ATH had not accepted those prices and MOQ increases, Lief Labs would not have provided ATH with inventory that ATH was dependent upon after having utilized the same manufacturer for over ten (10) years.

ATH was never compensated for Lief Labs' failures and was always expected to absorb the related costs, despite being a massively smaller company. ATH reached out to Lief Labs on numerous occasions to see if they'd be willing to work with ATH on the resulting costs, but Lief Labs refused to cooperate and instead continues to demand payment in full.

Kam had requested a payment plan that would permit ATH to mitigate the business interruptions described above and pay down the balance owed, while still accepting the faulty products and delayed production runs. However, once ATH began the payment plan on or around April 29, 2022, Lief Labs increased the repayment amounts, each time going back on their word.

The cash flow issues impacted other parts of ATH's business. ATH also incurred emergency costs in switching manufacturers in order to replace Lief Labs, but ultimately the business impacts caused by Lief Labs were too severe to absorb without filing for bankruptcy protection.

Additionally, the Debtor previously leased warehouse space at 449 Cooke Street, Honolulu, HI, 96813 (the "Cooke Street Space"). Prior to the Chapter 11 Case, the Debtor vacated the Cooke Street Space, as the expense related to the corresponding lease (the "Cooke Street Space Lease") was causing the Debtor an unnecessary burden. The Chapter 11 Case was filed, in part, to reject the Cooke Street Space Lease.

### 1.9. Significant Events During the Bankruptcy Case.

The Debtor has taken a number of steps in the Chapter 11 Case to implement its restructuring. Prior to the Petition Date, the Debtor began the process of analyzing its leases and determined, in its business judgment, that the Cooke Street Space Lease was unnecessary and burdensome to the Debtor's estate and that the costs incurred under the Cooke Street Space Lease constituted an unnecessary drain on the Debtor's

8

already limited resources.  Accordingly, on the Petition Date, the Debtor filed its *Motion for Entry of an Order Authorizing Debtor to Reject the Cooke Street Space Lease Nunc Pro Tunc to the Petition Date* [D.I. 11] (the "Rejection Motion").  The Debtor subsequently entered into a stipulated order authorizing the rejection of the Cooke Street Space Lease (the "Stipulated Rejection Order") with the Trustees of the Estate of Bernice Pauahi Bishop, the landlord.  On June 7, 2023, the Court approved the Stipulated Rejection Order. *See* dkt. # 49.

Also, on the Petition Date, the Debtor filed the *Motion for Order Authorizing Debtor to Use Cash Collateral Pursuant 11 U.S.C. § 363(c)(2)* (the "Cash Collateral Motion"), which was granted on an interim and final basis (the "Original Cash Collateral Orders").  *See* dkt. ## 10, 24, 57.   The Debtor has been in contact with its only secured lender, the SBA, who indicated that it was supportive of the bankruptcy proceedings, the Debtor's reorganization efforts, and the Cash Collateral Motion. Accordingly, on August 2, 2023, the Debtor entered into a stipulated cash collateral order with the SBA (the "Further Cash Collateral Order"), permitting the Debtor to utilize cash collateral through December 31, 2023. *See* dkt. # 76.

Also during the Chapter 11 Case, the Debtor retained certain Professionals to implement its restructuring.  To this end, on May 15, 2023, the Debtor filed the:

a. *Debtor's Application for Entry of an Order Under Sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1 Authorizing Retention and Employment of Pashman Stein Walder Hayden, P.C. as Co-Counsel for the Debtor Nunc Pro Tunc to the Petition Date* [D.I. 5]. The Court entered an interim order approving the retention of Pashman on June 1, 2023 [D.I. 43], and a final order on June 9, 2023 [D.I. 55].

b. *Application to Employ Professional* [D.I. 4], which sought to employ Choi & Ito, Attorneys at Law ("C&I"), as Local Bankruptcy Counsel. The Court entered an interim order approving the retention of C&I on June 1, 2023 [D.I. 42], and a final order on June 9, 2023 [D.I. 58].

# ARTICLE 2

# THE PLAN

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not

placed in a class for purpose of payment. For example, Administrative Expense Claims and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is presumed to accept the Plan.

## 2.1. <u>Unclassified Claims.</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expense Claim and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full, unless the Holder of the Administrative Expense Claim agrees to a different treatment. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Holder of an Administrative Claim or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

10

1.  If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.  If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.  Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0 | Not applicable. |

11

| | | |
|---|---|---|
| Administrative Tax Claim | Approximately $6,000.00 | Payment through the Plan as follows:<br><br>Taxes that arise in the ordinary course of business after the Petition Date will be paid in the ordinary course and pursuant to the ordinary business practices between the Debtor and the relevant taxing authorities. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | Approximately $40,047.50 | Payment through the Plan as follows:<br><br>Paid in full on the Effective Date. |

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 31 of 99

| Professional fees, as approved by the Bankruptcy Court | Approximately $76,336.00 | Payment through the Plan as follows:<br><br>Allowed Professional Fee Claims that are due and owing as of the Effective Date shall be paid in Cash by the Debtor on the Effective Date. Further, each Professional who holds a Professional Fee Claim shall be required to file with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Professional Fee Bar Date. A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed pursuant to this Article 2 shall be paid only to the extent Allowed by Final Order. Once all of the Professional Fee Claims have been considered and Allowed by the Bankruptcy Court, the Debtor or the Reorganized Debtor, as the case may be, shall pay, after the application of any retainer amounts held by such Professional, such Allowed Professional Fee Claims as soon as practicable and in accordance with the Debtor's Disposable Income projections. |

13

| | | |
|---|---|---|
| Subchapter V Trustee | Approximately $9,000.00 | Paid on the later date of the Effective Date of the Plan or the date they are Allowed by the Court. |
| TOTAL | $131,383.50 | |

B. Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Priority Tax Claims | $5,475.70 | All Allowed Priority Tax Claims shall be paid in full on or after the Effective Date. If the Priority Tax Claims are not paid on the Effective Date, the Priority Tax Claims will be paid in Q4 2023. |

**2.2 Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

14

A. Class of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of: SBA<br><br>Collateral description = All tangible and intangible person property<br><br>Total Secured Claim Asserted = $520,316.70 | No | Unimpaired | SBA's Allowed Secured Claim shall be reinstated on the Effective Date and paid in full in accordance with the terms of the EIDL Loan. |

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 34 of 99

B.  Class of General Unsecured Claims

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 2, which contains General Unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 2 | General Unsecured Class<br><br>Total Claims Asserted = $767,609.78 | Impaired | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a different treatment, all Allowed General Unsecured Claims shall be paid pro rata in quarterly installments from Disposable Income commencing on the First Distribution Date (i.e., Q1 2024) to the Last Distribution Date (3 years after). |

C.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company, the Equity Interest holders are the members.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | Equity Interests | Unimpaired | Maintain existing Equity Interest |

## 2.3. **Claim Objections**

The Debtor or the Reorganized Debtor, as applicable, may object to the amount or validity of any Claim within 180 days of the Confirmation Date (the "Claims Objection Deadline") by filing an objection with the Bankruptcy Court and serving a copy of the objection on the Holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor or the Reorganized Debtor, as applicable, will pay the Allowed Claim in accordance with the Plan.

## 2.4. **Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (*i.e.,* accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the Executory Contracts.

The Debtor will reject any Executory Contract that is not expressly included on the Assumed Contract List or that has previously been rejected under section 365 of the Bankruptcy Code by an order of the Bankruptcy Court.

**The deadline for filing a Proof of Claim based on a Rejection Claim arising from the rejection of an Executory Contract that is rejected by the Debtor is 30 days after entry of the Confirmation Order.** Any Rejection Claim based on the

17

rejection of an Executory Contract will be barred if the Proof of Claim is not timely filed by the applicable Rejection Claim Bar Date, unless the Bankruptcy Court orders otherwise.

### 2.5. Means for Implementation of the Plan.

The Plan will be funded by the proceeds realized from the operations of the Debtor. On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.

The officers and directors of the Debtor immediately prior to the Effective Date shall serve as the initial officers and directors of the Reorganized Debtor on and after the Effective Date. Each officer and director shall serve in accordance with applicable non-bankruptcy law and the Debtor's corporate governance documents, as each of the same may be amended from time to time.

### 2.6. Payments.

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, payments to Creditors provided for in the Plan will be made by the Reorganized Debtor.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, payments to Creditors provided for in the Plan will be made by the Debtor.

### 2.7. Post-Confirmation Management.

Kam shall remain the Reorganized Debtor's manager after the Effective Date. Kam's annual compensation shall be $60,000.00.

### 2.8. Tax Consequences of the Plan.

***Creditors and Holders of Equity Interests concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys,***

18

*and/or advisors.*

The following discussion summarizes certain federal income tax consequences of the implementation of the Plan to the Debtors and certain Holders of Claims. The following summary does not address the federal income tax consequences to (i) Holders whose Claims are entitled to reinstatement or payment in full in Cash, or are otherwise unimpaired under the Plan (*e.g.*, Holders of Administrative Expense Claims, Holders of Priority Tax Claims), or (ii) Holders whose Claims or Equity Interests are or may be extinguished without a distribution in exchange therefor.

The following summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions and published administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this summary does not address foreign, state or local tax consequences of the Plan.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

A. Consequences to the Debtor

1. Cancellation of Debt

The tax attribute reduction rules of Internal Revenue Code section 108 may have the effect of severely reducing or eliminating the NOLs of the Debtor. Due to legal and factual uncertainties and other matters including the potential occurrence

19

of a previous ownership change under Internal Revenue Code section 382, the extent to which NOLs will be available to shelter income from federal income tax currently is unclear. Creditors and other parties in interest are cautioned against assuming that such NOLs will be available to any extent for such purpose.

### 2. Reduction of the Debtor's Indebtedness

As a result of the Plan's implementation, the amount of the Debtor's aggregate outstanding indebtedness will be reduced substantially. (Any amount of potential discharged indebtedness for federal income tax purposes will be referred to herein as a "Debt Discharge Amount"). In general, the Internal Revenue Code provides that a taxpayer who realizes a discharge of indebtedness must include the Debt Discharge Amount in its gross income in the taxable year of discharge to the extent that the Debtor Discharge Amount exceeds any consideration given for such discharge. No income from the discharge of indebtedness is realized to the extent that payment of the liability being discharged would have given rise to a deduction.

If a taxpayer is in a title 11 case and the discharge of indebtedness occurs pursuant to a plan approved by the court, such discharge of indebtedness is specifically excluded from gross income.

The Internal Revenue Code requires certain tax attributes of a debtor to be reduced by the Debt Discharge Amount excluded from income. Tax attributes are reduced in the following order of priority: net operating losses and net operating loss carryovers; general business credits; minimum tax credits; capital loss carryovers; basis of property of the taxpayer; passive activity loss or credit carryovers and foreign tax credit carryovers. Tax attributes are generally reduced by one dollar for each dollar excluded from gross income, except that general tax credits, minimum tax credits and foreign tax credits are reduced by 33.3 cents for each dollar excluded from gross income. As discussed above, the tax attribute reduction rules may eliminate all or a large portion of NOLs and other tax attributes.

### B. Consequences to Holders of Certain Claims

Each holder of a Claim will recognize gain or loss measured by the difference between (i) any cash and the fair market value of any other property received by such holder and (ii) its adjusted tax basis in the Claim. This income, gain or loss

20

will be capital gain or loss if the Claim is a capital asset in the holder's hands. Holders of Claims in the form of accounts or notes receivable acquired in the ordinary course of a trade or business for the performance of services or for the sale of inventory will recognize ordinary income, gain or loss. In addition, if a holder of a Claim has taken an ordinary deduction for the worthlessness of the Claim under the Code in a prior taxable year, any income or gain realized will be taxed as ordinary income to the extent of the ordinary deduction claimed.

### 2.9. **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

The Debtor has provided projected financial information through Q4 2026. Those projections are attached in **Exhibit B**.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. **Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The projections attached hereto as **Exhibit B** demonstrate the Debtor's ability to make all of the payments due both on the Effective Date, the First Distribution Date, and thereafter.

### 3.2. **Ability to Make Future Plan Payments And Operate Without Furter Reorganization**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Subchapter V Trustee as is necessary for the execution of the Plan.

The Debtor's financial projections, attached hereto as **Exhibit B**, show that

21

the Debtor will have cash flow after paying operating expenses and post-confirmation taxes to meet its obligations under the Plan. All Disposable Income is devoted to paying Allowed Claims under the Plan.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that Holders of Claims and Equity Interest who do not accept the Plan will receive at least as much under the Plan as such Holders of Claims and Equity Interests would receive in a liquidation under chapter 7 of the Bankruptcy Code. A liquidation analysis is attached hereto as **Exhibit C**.

## ARTICLE 5
## DISCHARGE.

**5.1.**      **Discharge.**

**If the Plan is confirmed under § 1191(a)**, on the Confirmation Date of this Plan, the Debtor will be discharged form any debt that arose before Confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b)**, as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Bankruptcy Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Bankruptcy Court shall grant the Debtor a discharge of all debts provided in § 1141(d)(1)(A) of this title, and all other debts allowed under § 503 of this title provided for in this Plan, except any debt-

1.  on which the last payment is due after the first three years of the Plan, or such other time not to exceed five years fixed by the

22

Court; or

2. if applicable, of the kind specified in § 523(a) of this title.

This Plan constitutes the Debtor's request that if the Plan is confirmed under § 1191(b), the discharge, to be granted by the Bankruptcy Court after completion by the Debtor of all payments due under the Plan, shall apply to all debts on which the last payment is due on or before the Final Distribution Date.

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.    Title to Assets.

If a Plan is Confirmed under section 1191(A) of the Bankruptcy Code, except as otherwise provided in the Plan or in the Confirmation Order, (i) Confirmation of the Plan vests all of the property of the Estate in the Debtor, and (ii) after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests.

If a Plan is confirmed under section 1191(b) of the Bankruptcy Code, property of the Estate includes, in addition to the property specified in section 541 of the Bankruptcy Code, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in section 1185 of the Bankruptcy Code, the Plan, or the Confirmation Order, the Debtor shall remain in possession of all property of the Estate. In the event the Court orders this case converted to a Chapter 7 case after the plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the plan, and any rights of action, and any property acquired by the Reorganized Debtor under or in connection with the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

### 6.2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor, all Creditors, and all Holders of Equity Interests whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.　Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.　Retention of Jurisdiction by the Bankruptcy Court.

The proposed Confirmation Order will provide that the Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to Professionals and other Administrative Expense Claims; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of the Executory Contracts; (v) to adjudicate any cause of action which may exist in favor of the Debtor, including Avoidance Actions; and (vi) to hear any other matter not inconsistent with the provisions of the Bankruptcy Code.

### 6.5.　Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.　Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed

U.S. Bankruptcy Court - Hawaii　#23-00362　Dkt # 105　Filed　09/25/23　Page 43 of 99

modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 6.8 Default; Accelerated Judgment

In the event of a post-Effective Date payment default by the Debtor under Sections 2.1 or 2.2 of this Plan, the affected creditor may give notice to the Debtor of the default; and if the default is not cured and remains unresolved twenty-one (21) days after such notice has been given, the Court may enter judgment in favor of the affected creditor and against the Debtor on motion of the affected creditor supported by an affidavit attesting as to the Debtor's payment default, the Debtor's failure to timely cure the same and the giving of notice to the Debtor as provided herein.

### 6.9 Compromise and Settlement of Claims and Controversies

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any Distribution to be made on account of such Allowed Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and Holders of Claims and Equity Interests and is fair, equitable and reasonable.

25

**6.10**        <u>Releases by the Debtor</u>

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the consummation of the transactions contemplated by this Plan, on the Effective Date, the Released Parties are deemed forever released by the Debtor and its Estate, and each of its successors and assigns, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor or the Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) for acts or omissions occurring up to the Effective Date based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the business or contractual arrangements between the Debtor and any of the Released Parties, the negotiation, formulation or preparation of this Plan (collectively, the "<u>Debtor Released Claims</u>"), other than Debtor Released Claims against any of the Released Parties arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

**6.11**        <u>Exculpation</u>

As of the Effective Date, none of the Debtor, Kam (but only to the extent acting in a fiduciary capacity to the estate), Debtor's Professionals, or the Subchapter V Trustee (collectively, the "<u>Exculpated Parties</u>") shall have or incur any liability to any Holder of a Claim or Equity Interest, or other party in interest with respect to any Exculpated Claim, including, without limitation, any act or omission occurring after the Petition Date through and including the Effective Date in connection with, related to, or arising out of, in whole or in part, the administration of Debtor's Chapter 11 Case (but not including transactions and events occurring in the ordinary course of the Debtors' business during the pendency of the case); provided, however, that this exculpation provision: (1) shall not limit the rights of any holder of a claim or equity interest to enforce rights arising under the Plan, (2) shall have no effect on the liability of the Exculpated Parties for willful misconduct, gross negligence, fraud

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed   09/25/23   Page 45 of 99

or criminal misconduct as determined by a Final Order of a court of competent jurisdiction, and (3) shall have no effect on the liability of the Debtors and their respective Professionals for sanctions under Rule 9011 or any similar rule, statute, or doctrine as determined by a Final Order of a court of competent jurisdiction. The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

### 6.12 Injunction

**If the Plan is confirmed under Section 1191(a)**, then from and after the Effective Date, except as otherwise provided in the Plan, all persons who have held, hold or may hold Claims against or Equity Interests in the Debtor shall be permanently enjoined from commencing or continuing in any manner against the Debtor, Estate, Kam, or their respective properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to this Plan. Except as otherwise expressly provided in this Plan, or for obligations issued pursuant to this Plan, all persons who have held, hold or may hold Claims or Equity Interests that have been released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor, Estate, Kam, or their respective properties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estates of such persons on account of or in connection with or with respect to any such Claims or Equity Interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, settled or discharged pursuant to this Plan.

**If the Plan is confirmed under § 1191(b)**, then, from the Effective Date until the date the Bankruptcy Court grants the Debtor a discharge of all debts provided in § 1141(d)(1)(A) of this title, the automatic stay arising under Section 362 shall remain in force and effect until or unless the Bankruptcy Court orders otherwise. Upon the Debtor's completion of all payments under the Plan, and upon the Bankruptcy Court's granting the Debtor a discharge of all debts provided in §

U.S. Bankruptcy Court - Hawaii  #23-00362  Dkt # 105  Filed  09/25/23  Page 46 of 99

1141(d)(1)(A) of this title, except as otherwise provided in the Plan, all persons who have held, hold or may hold Claims against or Equity Interests in the Debtor are permanently enjoined from commencing or continuing in any manner against the Debtor, the Estate, Kam, or their respective properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to this Plan. Except as otherwise expressly provided in this Plan, or for obligations issued pursuant to this Plan, all persons who have held, hold or may hold Claims or Equity Interests that have been released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor, the Estate, Kam, or their respective properties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estates of such persons on account of or in connection with or with respect to any such Claims or Equity Interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, settled or discharged pursuant to this Plan.

### 6.13     Term of Injunctions or Stays

Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

## ARTICLE 7
## ATTACHMENTS

28

The following documents are deemed to be part of the Plan:

Exhibit A:    Most recently filed Monthly Operating Report

Exhibit B:    Financial Projections

Exhibit C:    Liquidation Analysis

The Assumed Contracts List, to be included in the Plan Supplement.

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document that sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the Class of your Claim or Equity Interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the Class in which you are grouped. The pertinent section of the Plan dealing with that Class will explain, among other things, who is in that Class, what is the size of the Class, what you will receive if the Plan is Confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists Classes of Claimants and their types of Claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose Claim is Impaired under the Plan is entitled to vote, if either (i) the creditor's Claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filings. Any Claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** The Chart in Section 2.2 identifies the Classes of creditors and indicates which Classes are Impaired and entitled to vote. If your Claim is Impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to Claim Holders for their review, consideration, and approval. The deadline by which ballots must be returned is [x]. Ballots may be returned via email to lsalcedo@pashmanstein.com or mailed to the following address:

**ATH Sports Nutrition LLC**
**Pashman Stein Walder Hayden, P.C.**
**Court Plaza South, East Wing**
**21 Main Street, Suite 200**

Hackensack, NJ 07601
Attn: Leslie Salcedo

**How Do I Determine When and How Much I Will Be Paid?** In Article 2 of the Plan, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

# ARTICLE 9
## DEFINITIONS

**9.1** **"Administrative Expense Bar Date"** shall apply to Administrative Expense Claims and means the first Business Day that is thirty (30) days after the Effective Date or such other date as established by Final Order of the Bankruptcy Court.

**9.2** **"Administrative Expense Claim"** or **"Administrative Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred on or after the Commencement Date of preserving the Estate and operating the Debtor's business; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) Professional Fee Claims; and (d) any fees or charges assessed against and payable by the Debtor under Section 1930 of title 28 of the United States Code.

**9.3** **"Allowed Claim"** means (a) any Claim against the Debtor, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely filed Proof of Claim has been filed, or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been filed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such an objection is so filed and the Claim shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

**9.4** **"Allowed Priority Tax Claim"** means a Priority Tax Claim to the extent that it is or has become and Allowed Claim, which in any event shall be

31

reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.5** **"Allowed Secured Claim"** means Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent Allowed as secured claims under § 506 of the Bankruptcy Code.

**9.6** **"Allowed General Unsecured Claim"** means an unsecured claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.7** **"Assets"** means all assets and property of the Estate of the Debtor, regardless of whether reflected in the financial records of the Debtor, including but not limited to: Cash, deposits, refunds, rebates, abatements, fixtures, equipment, inventory, contractual interests, intangibles, claims, Cause of Action, suits, setoffs, recoupments, equitable or legal rights, interests and remedies.

**9.8** **"Assumed Contracts"** means an Executory Contract deemed assumed effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

**9.9** **"Assumed Contracts List"** means the list of Assumed Contracts the Debtor intends to assume pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Assumed Contract List shall be included with the Plan Supplement.

**9.10** **"Avoidance Actions"** means the Causes of Action under sections 502(d),542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code. These may also be referred to as the "Chapter 5 Causes of Action".

**9.11** **"Ballot"** or **"Ballots"** means the ballots accompanying the Plan upon which Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

**9.12** **"Bankruptcy Code"** or **"Code"** means title 11 of the United States

Code, as amended and in effect on the Commencement Date.

**9.13** **"Bankruptcy Court"** means the United States Bankruptcy Court for District of Hawaii having jurisdiction over the Chapter 11 Case.

**9.14** **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and (b) the Local Rules, in each case, as in effect on the Commencement Date.

**9.15** "**Bar Date**" means the deadline set by the Bankruptcy Court, pursuant to a Final Order or otherwise, for filing Proofs of Claim in the Case, as the context may require, which includes the Administrative Expense Bar Date, the General Claims Bar Date, and the Governmental Claims Bar Date.

**9.16** **"Business Day"** means any day other than: (a) a Saturday, (b) a Sunday, and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**9.17** **"C&I"** shall have the meaning ascribed to it in section 1.9 of the Plan.

**9.18** **"Case"** has the same meaning as the term "Chapter 11 Case".

**9.19** **"Cash"** means legal tender of the United States of America.

**9.20** **"Cash Collateral Motion"** shall have the meaning ascribed to it in section 1.9 of the Plan.

**9.21** **"Cash Equivalents"** means equivalents of Cash in the form of readily marketable securities or instruments issued by an Entity, including readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "P2" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than five hundred million dollars ($500,000,000) having maturities of not more than one year, at the then generally prevailing rates of interest for like amounts and like periods.

**9.22** **"Causes of Action"** means any and all actions, causes of action, rights,

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed   09/25/23   Page 52 of 99

suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to the Avoidance Actions, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Case, including through the Effective Date, that belong to the Debtor, the Debtor-in-Possession, or the Estate.

9.23 **"Chapter 11 Case"** means this case under Subchapter V of chapter 11 of the Bankruptcy Code in which ATH Sports Nutrition LLC is the Debtor-in-Possession.

9.24 **"Claim"** means any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

9.25 **"Claims Objection Deadline"** shall have the meaning ascribed to it in Section 2.3 of the Plan.

9.26 **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

9.27 **"Commencement Date"** means May 15, 2023, the date the chapter 11 petition for relief was filed.

9.28 **"Confirmation"** means the entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

9.29 **"Confirmation Date"** means the date upon which the Bankruptcy Court shall enter the Confirmation Order; *provided*, *however*, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such day or the date on which such stay expires and is no longer in effect.

9.30 **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time

to time, which is presently scheduled for _____, 2023 at _:__ __.m. (HST).

**9.31** **"Confirmation Order"** means an order of the Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.32** **"Cooke Street Space"** shall have the meaning ascribed to in section 1.8 of the Plan.

**9.33** **"Cooke Street Space Lease"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**9.34** **"COVID-19"** shall have the meaning ascribed to it in section 1.2 of the Plan.

**9.35** "**Creditor**" has the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

**9.36** "**Cure**" means the payment or other honoring of all obligations required to be paid or honored in connection with the assumption of an Executory Contract pursuant to § 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if it all, pursuant to § 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an Executory Contract, pursuant to §365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such Executory Contract, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**9.37** **"Debt Discharge Amount"** shall have the meaning set forth in section 2.8 of the Plan.

**9.38** **"Debtor and Debtor-in-Position"** means ATH Sports Nutrition LLC, the debtor and debtor in possession in this Case.

**9.39** "**Disallowed**" means a (a) Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, or as provided in this Plan, (b) Claim or

35

any portion thereof that is Scheduled at zero or as an unknown amount, or as contingent, disputed, and/or unliquidated, and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

9.40 "**Disposable Income**" shall have the meaning ascribed to it in § 1191(d) of the Bankruptcy Code.

9.41 "**Disputed Claim**" means any Claim against the Debtor pursuant to § 502 of the Bankruptcy Code which the Debtor has in any way objected to, challenged, or otherwise disputed.

9.42 "**Distribution**" means a distribution of Cash or other Assets of the Estate made in accordance with the Plan to Holders of Allowed Claims.

9.43 "**Distribution Date**" means the date on which the Debtor or Subchapter V Trustee, as the case may be, shall make a Distribution, which shall be a date or dates selected by the Debtor in accordance with the terms of this Plan.

9.44 "**DTC**" shall have the meaning ascribed to in section 1.1 of the Plan.

9.45 "**Effective Date**" means the first Business Day after the date the Confirmation Order becomes a Final Order.

9.46 "**Entity**" means an entity as defined in Section 101(15) of the Bankruptcy Code.

9.47 "**EIDL Loan**" shall have the meaning ascribed to it in section 1.6 of the Plan.

9.48 "**Equity Interest**" or **Interest**" means an ownership interest in the Debtor.

**9.49** **"Estate"** means the estate created in the Debtor's Chapter 11 Case containing all assets of the Debtor pursuant to Bankruptcy Code section 541.

**9.50** **"Exculpated Claim"** means any Claim or Causes of Action whatsoever related to any act taken or omitted occurring after the Commencement Date through and including the Effective Date arising out of the administration of the Debtor's Chapter 11 Case (but not including transactions and events occurring in the ordinary course of the Debtors' business during the pendency of the case), including, without limitation, (i) the negotiation of any settlements entered into, with, or by the Debtor or any Estate representative, (ii) the formulation, preparation, dissemination, negotiation, filing, prosecution, approval or administration of the Plan and/or any financing, investment, or sale agreement with respect to the Debtor, and/or (iii) any transactions approved by the Bankruptcy Court (including any contract, instrument, release, assignment, or other agreement or document created or entered into in connection with any such negotiations or settlements of the Chapter 11 Case, or any financing agreement or settlement agreement in connection therewith, the filing of the Chapter 11 Case, the pursuit of Confirmation, and the administration implementation of the Plan).

**9.51** **"Exculpated Parties"** shall have the meaning ascribed to it in section 6.12 of the Plan.

**9.52** **"Executory Contract"** means all unexpired leases and executory contracts as described in section 365 of the Bankruptcy Code.

**9.53** **"Final Order"** means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.54** **"First Distribution Date"** means the date identified in any notice of Effective Date which shall be the first date of quarterly installment payments under this Plan. The First Distribution Date shall fall no later than the last Business Day of the month preceding the month of the Effective Date.

**9.55** **"Further Cash Collateral Order"** shall have the meaning ascribed to it in section 1.9 of the Plan.

**9.56** **"General Claims Bar Date"** means July 24, 2023.

37

**9.57** **"Governmental Claims Bar Date"** means July 24, 2023.

**9.58** **"General Unsecured Claim"** means any Claim against a Debtor that is not (i) a Secured Claim; (ii) entitled to priority under Sections 503 or 507 of the Bankruptcy Code; (iii) an Administrative Expense Claim, or (iv) a Priority Tax Claim.

**9.59** **"Holder"** means the beneficial holder of any Claim or Equity Interest, in its capacity as such.

**9.60** **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

**9.61** **"Insiders"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code, plus all entities under common control with the Debtor as of the Petition Date.

**9.62** **"IRS"** shall have the meaning ascribed to it in section 2.8 of the Plan.

**9.63** **"Kam"** shall have the meaning ascribed to in section 1.4 of the Plan.

**9.64** **"Last Distribution Date"** means three (3) years from the First Distribution Date.

**9.65** **"Liabilities"** means the liabilities of the Estate, whether or not reflected in the financial records of the Debtor.

**9.66** **"Lief Labs"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**9.67** **"Lien"** shall have the meaning ascribed to it in § 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided or void shall not constitute a Lien for the purposes of the Plan.

**9.68** **"Local Rules"** means the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Hawaii.

**9.69** **"MOQ"** shall have the meaning ascribed to it in section 1.8 of the Plan.

38

**9.70** **"Original Cash Collateral Order"** shall have the meaning ascribed to it in section 1.9 of the Plan.

**9.71** **"Person"** means a person as defined in § 101(41) of the Bankruptcy Code.

**9.72** **"Petition Date"** means the Commencement Date, or May 15, 2023.

**9.73** **"Plan"** means this plan of reorganization for the resolution of outstanding Claims and Interests in the Case, as may be modified, amended, or supplemented at any time in accordance with the Bankruptcy Code, Bankruptcy Rules, and the terms hereof, including all exhibits, supplements, appendices, and schedules hereto.

**9.74** **"Plan Proponent"** means the Debtor.

**9.75** **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be filed at least seven (7) calendar days before the deadline to object to the Plan, and any additional documents or schedules filed before the Effective Date as supplements or amendments to the Plan Supplement. The Debtor shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**9.76** **"Priority Tax Claim"** means any Claim of a governmental unit (as that term is defined in the Bankruptcy Code) of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**9.77** **"Professional"** means any person or Entity employed by the Debtor in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and who shall be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**9.78** **"Professional Fee Bar Date"** shall apply to Professional Fee Claims and means the first Business Day that is sixty (60) days after the Effective Date or such other date established by Final Order of the Bankruptcy Court.

**9.79** **"Professional Fee Claims"** means an Administrative Claim for reasonable compensation of a Professional for services rendered or expenses

39

incurred in the Chapter 11 Case on or prior to the Effective Date.

**9.80** **"Proof of Claim"** means a Claim filed against the Debtor in the Chapter 11 Case.

**9.81** **"Record Date"** means the record date for determining the entitlement to vote on the Plan, which date is [x].

**9.82** **"Rejected Contract"** means an Executory Contract deemed rejected effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

**9.83** **"Rejection Claim"** means any Claim arising from a Rejected Contract, which is a General Unsecured Claim.

**9.84** **"Rejection Claims Bar Date"** means the deadline to file a Proof of Claim for damages under a Rejected Contract and such deadline is thirty (30) days after the entry of an order by the Bankruptcy Court rejecting such contract or thirty (30) days after entry of the Confirmation Order (in the event the Rejected Contract was rejected pursuant to the Plan), whichever occurs first.

**9.85** **"Rejection Motion"** shall have the meaning ascribed to it in section 1.9 of the Plan.

**9.86** "**Released Parties"** means each of the following: (a) the Debtor; (b) the Debtor's founder and manager, Kam; (c) the Debtor's prepetition attorneys and professionals; and (d) the Debtor's Professionals.

**9.87** **"Representatives"** means, without limitation, any existing or former affiliate, subsidiary, member, officer, director, partner, stockholder, trustee, member, representative, employee, agent, attorney, business advisor, financial advisor, accountant, other Professional, their successors or assigns, or any Person who is or was in control of any of the foregoing.

**9.88** "**Reorganized Debtor"** means the Debtor after the Effective Date. Where the context requires, the term "Debtor" will mean the Reorganized Debtor.

**9.89** **"SBA"** shall have the meaning ascribed to it in section 1.6 of the Plan.

40

**9.90** "**Schedules**" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor pursuant to § 521 of the Bankruptcy Code, as such schedules and statement have been or may be supplemented or amended from time to time.

**9.91** "**Secured Claim**" means a Claim that is secured by a Lien (which is valid, perfected, and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a set off under § 553 of the Bankruptcy Code, to the extent of the value of the collateral, as determined in accordance with § 506(a) of the Bankruptcy Code, or to the extent of the amount subject to setoff.

**9.92** "**Stipulated Rejection Order**" shall have the meaning ascribed to it in section 1.9 of the Plan.

**9.93** "**Subchapter V Trustee**" or "**Trustee**" means Kevin Lam, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the order confirming the Plan.

**9.94** "**Tax Code**" shall have the meaning ascribed to it in section 2.8 of the Plan.

**9.95** "**Unclaimed Property**" means any Distributions that are returned to the Debtor or the Subchapter V Trustee, as the case may be, as: (i) undeliverable to a Creditor or (ii) unclaimed by a Creditor or Holder of an Equity Interest.

**9.96** "**Unimpaired**" means an Allowed Claim or Equity Interest that is not Impaired.

**9.97** "**United States Trustee**" or "**U.S. Trustee**" means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the District of Hawaii.

41

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed   09/25/23   Page 60 of 99

Dated: September 11, 2023             Respectfully submitted,

                                 DEBTOR
                                 ATH SPORTS NUTRITION LLC

                                 By: */s/ Stuart Kaunaloa Kam*
                                 Name: Stuart Kaunaloa Kam
                                 Founder and Manager

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 105   Filed  09/25/23   Page 61 of 99

**Exhibit A**

Debtor Name **ATH Sports Nutrition LLC**

United States Bankruptcy Court for the: _____ District of **Hawaii**

Case number: **23-00362**

☒ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11   12/17

Month: _____ June 2023

Date report filed: **08/7/2023**
MM / DD / YYYY

Line of business: **Health and Personal Care Stores**

NAISC code: **4461**

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: **Stuart Kaunaloa Kam**

Original signature of responsible party **/s/ Stuart Kaunaloa Kam**

Printed name of responsible party **Stuart Kaunaloa Kam**

## █ 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☒ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☒ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☒ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☒ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☒ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☒ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☒ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☒ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☒ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☒ | ☐ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☒ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☒ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☒ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☒ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☒ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☒ | ☐ |

U.S. Bankruptcy Court Hawaii #23-00362 Dkt # 108 Filed 08/25/23 Page 63 of 99

17. Have you paid any bills you owed before you filed bankruptcy?     ☐ ☒ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?     ☐ ☒ ☐

## 2. Summary of Cash Activity for All Accounts

**19. Total opening balance of all accounts**

$ 68,107.87

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

**20. Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.     $ 97,879.58

**21. Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

$ −$127,476.53

Report the total from *Exhibit D* here.

**22. Net cash flow**

Subtract line 21 from line 20 and report the result here.     - $ 29,596.95

This amount may be different from what you may have calculated as *net profit*.

**23. Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.     = $ 38,510.92

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

**24. Total payables**

$ 0

*(Exhibit E)*

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                              $ _____ 5,136.00

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?          0

27. What is the number of employees as of the date of this monthly report?   0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?          $ _____ 0

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ _____ 0

30. How much have you paid this month in other professional fees?          $ _____ 700.00

31. How much have you paid in total other professional fees since filing the case?          $ _____ 700.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | *Projected* | − | **Actual** | = | *Difference* |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 96,537.08 | − | $ 97,879.58 | = | $ 1342.50 |
| 33. **Cash disbursements** | $ 127,476.53 | − | $127,476.53 | = | $ 0.00 |
| 34. **Net cash flow** | $ -30,939.45 | − | $ -29,596.95 | | $ -1342.50 |

35. Total projected cash receipts for the next month:          $ _____ 100,000.00

36. Total projected cash disbursements for the next month:          - $ _____ 90,000

37. Total projected net cash flow for the next month:          = $ _____ 10,0000

---

Official Form 425C          **Monthly Operating Report for Small Business Under Chapter 11**          page **3**

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☒ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39. Bank reconciliation reports for each account.

☒ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41. Budget, projection, or forecast reports.

☐ 42. Project, job costing, or work-in-progress reports.

**In re ATH Sports Nutrition LLC**
**Case No. 23-00362**

**<u>Bank Statements</u>**


**First Hawaiian Bank**

ATH SPORTS NUTRITION LLC
CHAPTER 11 DIP CASE NO 23-00362
TAX ACCOUNT
2827 KALAWAO ST
HONOLULU HI 96822

Direct inquiries to:
(808) 844-4444 or Toll Free
(888) 844-4444

MAIN BANKING REGION
999 BISHOP ST
HONOLULU HI 96813

---

EFFECTIVE 8/9/23, ONLY U.S. STATES, GUAM AND CNMI ARE DOMESTIC NETWORK LOCATIONS. TERMINALS LOCATED IN OTHER U.S. TERRITORIES OR PROTECTORATES OR OTHER COUNTRIES MAY BE CONSIDERED FOREIGN. THE ATM WITHDRAWAL INTERNATIONAL FEE AND THE INTERNATIONAL TRANSACTION FEE MAY APPLY. FHB DOCUMENTS WILL BE REVISED ACCORDINGLY.

---

## Business Free Checking

| | |
|---|---|
| Account number | XXX |
| Low balance | $200.00 |
| Average balance | $200.00 |

**DAILY ACTIVITY**

| Date | Description | Additions | Subtractions | Balance |
|---|---|---|---|---|
| 05-31 | Beginning balance | | | $200.00 |
| 06-30 | Ending totals | .00 | .00 | $200.00 |

** No activity this statement period **

# RECONCILIATION OF YOUR ACCOUNT

| DEPOSITS NOT CREDITED | |
|---|---|
| Date | Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL** | $ |

| CHECKS OUTSTANDING | | | | | |
|---|---|---|---|---|---|
| Check No. | Amount | Check No. | Amount | Check No. | Amount |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | **TOTAL** | $ | |

| RECONCILIATION OF YOUR ACCOUNT | |
|---|---|
| ENTER ENDING BALANCE SHOWN ON THIS STATEMENT | |
| ADD TOTAL DEPOSITS NOT CREDITED | + |
| SUBTOTAL | = |
| SUBTRACT TOTAL CHECKS OUTSTANDING | - |
| **TOTAL** | = |
| YOUR BALANCE | |
| ADD INTEREST (IF ANY) | + |
| SUBTOTAL | = |
| SUBTRACT SERVICE CHARGE (IF ANY) | - |
| **TOTAL (SHOULD AGREE WITH THE TOTAL ABOVE)** | = |

## In Case of Errors or Questions About Your Account

It is important to examine your statement and report any discrepancies promptly. If you think there is an error on your statement, your receipt is wrong, or you need more information about a transaction listed on the statement or receipt, please immediately call or send a written dispute to the telephone or branch address listed on the first page of this statement.

You will lose any claim against us for unauthorized signatures or alterations by the same wrongdoer that you do not report within 30 days after the first statement showing that item is made available.

## In Case of Errors or Questions About Your Electronic Transfers
### (For Personal Accounts Only)

Telephone us or Write us at the phone number or branch address shown on the first page of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.

When reporting an error or requesting more information, please provide the following information: (1) your name and account number; (2) describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information; and (3) provide the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.


First Hawaiian Bank

Last statement: May 31, 2023
This statement: June 30, 2023
Total days in statement period: 30

ATH SPORTS NUTRITION LLC
CHAPTER 11 DIP CASE NO 23-00362
SUBCHAPTER V TRUSTEE
2827 KALAWAO ST
HONOLULU HI 96822

Page 1 of 1
XXX4167
( 0) Number of enclosure items

Direct inquiries to:
(808) 844-4444 or Toll Free
(888) 844-4444

MAIN BANKING REGION
999 BISHOP ST
HONOLULU HI 96813

EFFECTIVE 8/9/23, ONLY U.S. STATES, GUAM AND CNMI ARE DOMESTIC NETWORK LOCATIONS. TERMINALS LOCATED IN OTHER U.S. TERRITORIES OR PROTECTORATES OR OTHER COUNTRIES MAY BE CONSIDERED FOREIGN. THE ATM WITHDRAWAL INTERNATIONAL FEE AND THE INTERNATIONAL TRANSACTION FEE MAY APPLY. FHB DOCUMENTS WILL BE REVISED ACCORDINGLY.

## Business Free Checking

| | |
|---|---|
| Account number | XXX |
| Low balance | $200.00 |
| Average balance | $200.00 |

DAILY ACTIVITY

| Date | Description | Additions | Subtractions | Balance |
|------|-------------|-----------|--------------|---------|
| 05-31 | Beginning balance | | | $200.00 |
| 06-30 | Ending totals | .00 | .00 | $200.00 |

\*\* No activity this statement period \*\*

# RECONCILIATION OF YOUR ACCOUNT

| DEPOSITS NOT CREDITED | |
|---|---|
| Date | Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL** | $ |

| CHECKS OUTSTANDING | | | | | |
|---|---|---|---|---|---|
| Check No. | Amount | Check No. | Amount | Check No. | Amount |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | **TOTAL** | $ |

| RECONCILIATION OF YOUR ACCOUNT | |
|---|---|
| ENTER ENDING BALANCE SHOWN ON THIS STATEMENT | |
| ADD TOTAL DEPOSITS NOT CREDITED | + |
| SUBTOTAL | = |
| SUBTRACT TOTAL CHECKS OUTSTANDING | - |
| **TOTAL** | = |
| YOUR BALANCE | |
| ADD INTEREST (IF ANY) | + |
| SUBTOTAL | = |
| SUBTRACT SERVICE CHARGE (IF ANY) | - |
| **TOTAL (SHOULD AGREE WITH THE TOTAL ABOVE)** | = |

## In Case of Errors or Questions About Your Account

It is important to examine your statement and report any discrepancies promptly. If you think there is an error on your statement, your receipt is wrong, or you need more information about a transaction listed on the statement or receipt, please immediately call or send a written dispute to the telephone or branch address listed on the first page of this statement.

You will lose any claim against us for unauthorized signatures or alterations by the same wrongdoer that you do not report within 30 days after the first statement showing that item is made available.

## In Case of Errors or Questions About Your Electronic Transfers
### (For Personal Accounts Only)

Telephone us or Write us at the phone number or branch address shown on the first page of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.

When reporting an error or requesting more information, please provide the following information: (1) your name and account number; (2) describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information; and (3) provide the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.


First Hawaiian Bank

ATH SPORTS NUTRITION LLC
CHAPTER 11 DIP CASE NO 23-00362
OPERATING ACCOUNT
2827 KALAWAO ST
HONOLULU HI 96822

Page 1 of 1
XXXX8728
( 0) Number of enclosure items

Direct inquiries to:
(808) 844-4444 or Toll Free
(888) 844-4444

MAIN BANKING REGION
999 BISHOP ST
HONOLULU HI 96813

EFFECTIVE 8/9/23, ONLY U.S. STATES, GUAM AND CNMI ARE DOMESTIC NETWORK LOCATIONS. TERMINALS LOCATED IN OTHER U.S. TERRITORIES OR PROTECTORATES OR OTHER COUNTRIES MAY BE CONSIDERED FOREIGN. THE ATM WITHDRAWAL INTERNATIONAL FEE AND THE INTERNATIONAL TRANSACTION FEE MAY APPLY. FHB DOCUMENTS WILL BE REVISED ACCORDINGLY.

## Business Free Checking

| | |
|---|---|
| Account number | XXXX |
| Low balance | $265.55 |
| Average balance | $1,115.80 |

### DAILY ACTIVITY

| Date | Description | Additions | Subtractions | Balance |
|---|---|---|---|---|
| 05-31 | Beginning balance | | | $365.55 |
| 06-01 | ' Preauthorized Trnsfr | | -100.00 | 265.55 |
| | CHFIGR CK WEBXFR TRANSFER | | | |
| | 060123 7178403755 | | | |
| | ATH SPORTS NUTRITI | | | |
| 06-12 | Deposit - Mobile | 1,342.50 | | 1,608.05 |
| 06-30 | Ending totals | 1,342.50 | -100.00 | $1,608.05 |

# RECONCILIATION OF YOUR ACCOUNT

| DEPOSITS NOT CREDITED | |
|---|---|
| Date | Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL** | $ |

| CHECKS OUTSTANDING | | | | | |
|---|---|---|---|---|---|
| Check No. | Amount | Check No. | Amount | Check No. | Amount |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | **TOTAL** | $ |

| RECONCILIATION OF YOUR ACCOUNT | |
|---|---|
| ENTER ENDING BALANCE SHOWN ON THIS STATEMENT | |
| ADD TOTAL DEPOSITS NOT CREDITED | + |
| SUBTOTAL | = |
| SUBTRACT TOTAL CHECKS OUTSTANDING | - |
| **TOTAL** | = |
| YOUR BALANCE | |
| ADD INTEREST (IF ANY) | + |
| SUBTOTAL | = |
| SUBTRACT SERVICE CHARGE (IF ANY) | - |
| **TOTAL (SHOULD AGREE WITH THE TOTAL ABOVE)** | = |

## In Case of Errors or Questions About Your Account

It is important to examine your statement and report any discrepancies promptly. If you think there is an error on your statement, your receipt is wrong, or you need more information about a transaction listed on the statement or receipt, please immediately call or send a written dispute to the telephone or branch address listed on the first page of this statement.

You will lose any claim against us for unauthorized signatures or alterations by the same wrongdoer that you do not report within 30 days after the first statement showing that item is made available.

## In Case of Errors or Questions About Your Electronic Transfers
### (For Personal Accounts Only)

Telephone us or Write us at the phone number or branch address shown on the first page of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.

When reporting an error or requesting more information, please provide the following information: (1) your name and account number; (2) describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information; and (3) provide the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

 **MERCURY**

# ATH SPORTS NUTRITION LLC

2827 Kalawao Street,
Honolulu, HI 96822

EIN ••9516

## Account details

| | |
|---|---|
| Checking account | ✕✕✕✕7708 |
| Routing number | 091311229 |

## Account activity overview

| | |
|---|---|
| Beginning balance | $67,442.32 |
| Total withdrawals | −$127,476.53 |
| Total deposits | $96,537.08 |
| **Statement Balance** | **$36,502.87** |

Mercury is a financial technology company, not a bank. Banking services provided by Choice Financial Group and Evolve Bank & Trust®; Members FDIC.
Mercury | help@mercury.com | 660 Mission Street, San Francisco, CA 94105

## All Transactions /

| Date (UTC) | Description | Trx Type | | Amount | End of Day Balance |
|---|---|---|---|---|---|
| Jun 01 | Mercury Credit | ⇄ | Credit Account Payment | −$4,780.34 | |
| | Mercury IO Cashback | ← | Credit Cashback Deposit | $71.73 | |
| | Shoppayinst Afrm | ← | ACH In | $456.24 | |
| | Shopify | ← | ACH In | $4,583.94 | |
| | STRIPE | ← | ACH In | $1,620.03 | |
| | Shopify Capital | → | ACH Pull | −$513.47 | |
| | Shopify Capital | → | ACH Pull | −$744.55 | |
| | Shopify Capital | → | ACH Pull | −$499.33 | |
| | Shopify Capital | → | ACH Pull | −$681.42 | $66,955.15 |
| Jun 02 | Shoppayinst Afrm | ← | ACH In | $121.91 | |
| | STRIPE | ← | ACH In | $241.24 | |
| | Shopify | ← | ACH In | $2,498.43 | |
| | GUSTO | → | ACH Pull | −$2,500.00 | |
| | Shopify Capital | → | ACH Pull | −$385.20 | |
| | Gusto | → | ACH Pull | −$1,875.00 | |
| | Stuart Kam | ⇄ | ACH Payment | −$2,500.00 | |
| | Mercury Credit | ⇄ | Credit Account Payment | −$5,000.00 | |
| | Mercury IO Cashback | ← | Credit Cashback Deposit | $75.00 | $57,631.53 |
| Jun 05 | Shoppayinst Afrm | ← | ACH In | $121.39 | |
| | Amazon | ← | ACH In | $538.25 | |
| | Shopify | ← | ACH In | $2,370.38 | |
| | STRIPE | ← | ACH In | $811.84 | |
| | Fhbank Ck Webxfr | ← | ACH In | $100.00 | |
| | Shopify Capital | → | ACH Pull | −$473.89 | |
| | Diamond Logistics Group | ⇄ | ACH Payment | −$6,745.18 | $54,354.32 |
| Jun 06 | Shoppayinst Afrm | ← | ACH In | $52.82 | |
| | Shoppayinst Afrm | ← | ACH In | $218.11 | |
| | Shopify | ← | ACH In | $5,508.50 | |
| | STRIPE | ← | ACH In | $366.19 | |
| | Shopify Capital | → | ACH Pull | −$344.57 | |

Mercury | help@mercury.com | 660 Mission Street, San Francisco, CA 94105

## All Transactions /

| Date (UTC) | Description | Trx Type | | Amount | End of Day Balance |
|---|---|---|---|---|---|
| | Rakuten Super Logistics | → | ACH Pull | −$6,843.22 | |
| | Mercury Credit | ⇄ | Credit Account Payment | −$3,000.00 | |
| | Mercury IO Cashback | ← | Credit Cashback Deposit | $45.00 | $50,357.15 |
| Jun 07 | Shoppayinst Afrm | ← | ACH In | $115.62 | |
| | Shopify | ← | ACH In | $2,765.87 | |
| | STRIPE | ← | ACH In | $922.05 | |
| | Shopify Capital | → | ACH Pull | −$420.56 | |
| | Shopify Capital | → | ACH Pull | −$301.63 | |
| | Shopify Capital | → | ACH Pull | −$269.12 | $53,169.38 |
| Jun 08 | Shoppayinst Afrm | ← | ACH In | $164.20 | |
| | STRIPE | ← | ACH In | $254.65 | |
| | Shopify | ← | ACH In | $2,757.66 | |
| | Shopify Capital | → | ACH Pull | −$415.59 | $55,930.30 |
| Jun 09 | STRIPE | ← | ACH In | $363.21 | |
| | Shopify | ← | ACH In | $2,912.98 | |
| | Shopify Capital | → | ACH Pull | −$444.33 | |
| | Rakuten Super Logistics | → | ACH Pull | −$3,043.16 | $55,719.00 |
| Jun 12 | Shoppayinst Afrm | ← | ACH In | $112.09 | |
| | STRIPE | ← | ACH In | $149.07 | |
| | Shopify | ← | ACH In | $1,390.09 | |
| | Shopify Capital | → | ACH Pull | −$228.66 | $57,141.59 |
| Jun 13 | Mercury Credit | ⇄ | Credit Account Payment | −$5,000.00 | |
| | Mercury IO Cashback | ← | Credit Cashback Deposit | $75.00 | |
| | Shoppayinst Afrm | ← | ACH In | $298.49 | |
| | Amazon | ← | ACH In | $362.26 | |
| | Shoppayinst Afrm | ← | ACH In | $202.12 | |
| | Shoppayinst Afrm | ← | ACH In | $303.27 | |
| | Shopify | ← | ACH In | $5,233.45 | |
| | STRIPE | ← | ACH In | $320.96 | |
| | Shopify Capital | → | ACH Pull | −$328.25 | |

Mercury | help@mercury.com | 660 Mission Street, San Francisco, CA 94105

## All Transactions /

| Date (UTC) | Description | Trx Type | | Amount | End of Day Balance |
|---|---|---|---|---|---|
| | Mercury Credit | ⇄ | Credit Account Payment | −$5,000.00 | |
| | Mercury IO Cashback | ← | Credit Cashback Deposit | $75.00 | $53,683.89 |
| Jun 14 | Shoppayinst Afrm | ← | ACH In | $95.07 | |
| | Shopify | ← | ACH In | $3,477.76 | |
| | Shoppayinst Afrm | ← | ACH In | $146.10 | |
| | STRIPE | ← | ACH In | $693.94 | |
| | Amazon | ← | ACH In | $314.63 | |
| | Verizon | → | ACH Pull | −$133.37 | |
| | Verizon | → | ACH Pull | −$100.17 | |
| | Shopify Capital | → | ACH Pull | −$282.26 | |
| | Shopify Capital | → | ACH Pull | −$307.43 | |
| | Shopify Capital | → | ACH Pull | −$531.78 | $57,056.38 |
| Jun 15 | Shoppayinst Afrm | ← | ACH In | $52.82 | |
| | STRIPE | ← | ACH In | $958.81 | |
| | Shopify | ← | ACH In | $2,630.56 | |
| | Shopify Capital | → | ACH Pull | −$488.86 | |
| | Mercury Credit | ⇄ | Credit Account Payment | −$6,000.00 | |
| | Mercury IO Cashback | ← | Credit Cashback Deposit | $90.00 | $54,299.71 |
| Jun 16 | Kennedy Augafa | ⇗ | Wire Payment | −$1,875.00 | |
| | SHOPPAYINST AFRM | ← | ACH In | $223.69 | |
| | shopify | ← | ACH In | $1,795.93 | |
| | STRIPE | ← | ACH In | $448.54 | |
| | 79654 WEBGISTIX | → | ACH Pull | −$15,419.38 | |
| | SHOPIFY CAPITAL | → | ACH Pull | −$339.17 | |
| | SBA EIDL LOAN | → | ACH Pull | −$2,501.00 | |
| | Glanbia Nutritionals | ⇗ | Wire Payment | −$2,759.54 | |
| | Belmark | ⇗ | Wire Payment | −$5,590.80 | $28,282.98 |
| Jun 19 | Mercury Credit | ⇄ | Credit Account Payment | −$5,000.00 | |
| | Mercury IO Cashback | ← | Credit Cashback Deposit | $75.00 | $23,357.98 |
| Jun 20 | Deysha Victorine | ⇗ | Wire Payment | −$2,500.00 | |

Mercury | help@mercury.com | 660 Mission Street, San Francisco, CA 94105

## All Transactions /

| Date (UTC) | Description | Trx Type | | Amount | End of Day Balance |
|---|---|---|---|---|---|
| | STRIPE | ← | ACH In | $439.78 | |
| | shopify | ← | ACH In | $2,768.51 | |
| | SHOPIFY CAPITAL | → | ACH Pull | −$439.43 | |
| | Mercury Credit | ⇄ | Credit Account Payment | −$8,542.70 | |
| | Mercury IO Cashback | ← | Credit Cashback Deposit | $128.15 | |
| | Unknown | ⇗ | Wire | $1,875.00 | $17,087.29 |
| Jun 21 | Facebook | ▭ | ••0598 | −$942.60 | |
| | SHOPPAYINST AFRM | ← | ACH In | $101.46 | |
| | SHOPPAYINST AFRM | ← | ACH In | $113.31 | |
| | SHOPPAYINST AFRM | ← | ACH In | $81.00 | |
| | SHOPPAYINST AFRM | ← | ACH In | $287.23 | |
| | shopify | ← | ACH In | $9,833.24 | |
| | STRIPE | ← | ACH In | $255.45 | |
| | SHOPIFY CAPITAL | → | ACH Pull | −$405.48 | $26,410.90 |
| Jun 22 | shopify | ← | ACH In | $2,197.36 | |
| | STRIPE | ← | ACH In | $1,858.37 | |
| | SHOPPAYINST AFRM | ← | ACH In | $256.91 | |
| | SHOPIFY CAPITAL | → | ACH Pull | −$338.00 | |
| | SHOPIFY CAPITAL | → | ACH Pull | −$380.28 | |
| | SHOPIFY CAPITAL | → | ACH Pull | −$453.20 | |
| | SHOPIFY CAPITAL | → | ACH Pull | −$462.65 | $29,089.41 |
| Jun 23 | Facebook | ▭ | ••0598 | −$1,474.01 | |
| | Taxjar | ▭ | ••8998 | −$103.67 | |
| | STRIPE | ← | ACH In | $190.73 | |
| | shopify | ← | ACH In | $2,441.66 | |
| | AMAZON.C6Y7M9YMG | ← | ACH In | $1,094.80 | |
| | SHOPIFY CAPITAL | → | ACH Pull | −$352.87 | |
| | 79654 WEBGISTIX | → | ACH Pull | −$2,675.69 | |
| | Facebook | ▭ | ••0598 | −$942.41 | $27,267.95 |
| Jun 24 | Blank Canvas | ▭ | ••1127 | −$1,689.49 | |

Mercury | help@mercury.com | 660 Mission Street, San Francisco, CA 94105

## All Transactions /

| Date (UTC) | Description | Trx Type | Amount | End of Day Balance |
|---|---|---|---|---|
| | Klaviyo | ▭ ••8998 | −$459.80 | $25,118.66 |
| Jun 25 | Facebook | ▭ ••0598 | −$942.41 | $24,176.25 |
| Jun 26 | Facebook | ▭ ••0598 | −$942.41 | |
| | shopify | ← ACH In | $2,484.94 | |
| | SHOPPAYINST AFRM | ← ACH In | $154.73 | |
| | STRIPE | ← ACH In | $94.49 | $25,968.00 |
| Jun 27 | Facebook | ▭ ••0598 | −$942.41 | |
| | STRIPE | ← ACH In | $319.27 | |
| | shopify | ← ACH In | $5,945.81 | |
| | SHOPPAYINST AFRM | ← ACH In | $52.82 | |
| | SHOPPAYINST AFRM | ← ACH In | $201.53 | |
| | SHOPPAYINST AFRM | ← ACH In | $201.66 | |
| | Vitamin Shoppe | ◁ Check Deposit | $1,980.00 | $33,726.68 |
| Jun 28 | Facebook | ▭ ••0598 | −$942.41 | |
| | shopify | ← ACH In | $2,318.52 | |
| | STRIPE | ← ACH In | $1,461.72 | $36,564.51 |
| Jun 29 | Amazon | ▭ ••8128 | −$47.79 | |
| | UPS | ▭ ••8642 | −$145.06 | |
| | UPS | ▭ ••8642 | −$39.68 | |
| | Vitalabs | ▭ ••4383 | −$2,231.10 | |
| | Vitalabs | ▭ ••3445 | −$2,231.10 | |
| | Vitalabs | ▭ ••1461 | −$2,231.10 | |
| | Facebook | ▭ ••0598 | −$942.41 | |
| | SHOPPAYINST AFRM | ← ACH In | $95.68 | |
| | shopify | ← ACH In | $1,294.29 | |
| | STRIPE | ← ACH In | $278.57 | $30,364.81 |
| Jun 30 | Twilio | ▭ ••8998 | −$10.14 | |
| | STRIPE | ← ACH In | $899.29 | |
| | shopify | ← ACH In | $3,460.51 | |
| | Auto Routing | ◁ Payment Request | $1,688.40 | |

Mercury | help@mercury.com | 660 Mission Street, San Francisco, CA 94105

## All Transactions /

| Date (UTC) | Description | Trx Type | Amount | End of Day Balance |
|---|---|---|---|---|
| | Auto Routing | ◁ Payment Request | $100.00 | $36,502.87 |
| **Total** | | | | **$36,502.87** |

Mercury | help@mercury.com | 660 Mission Street, San Francisco, CA 94105

**In re ATH Sports Nutrition LLC**
**Case No. 23-00362**

**Profit and Loss**

# ATH Sports Nutrition LLC
## Balance Sheet
### As of June 30, 2023

|  | 6/30/2023 |
|---|---|
| **Current Assets** | |
| Cash | $38,511 |
| Accounts Receivable B2C | $0.00 |
| Accounts Receivable Whls | $7,311 |
| Other Current Assets | $0 |
| Inventory | $428,429 |
| **Total Current Assets** | $474,251 |
| | |
| **Fixed Assets** | |
| Machinery & Equipment | $0 |
| Furniture & Fixtures | $37,100 |
| Delivery Truck | $0 |
| Leasehold Improvements | $13,490 |
| Less: Accumulated Depreciation | $9,232 |
| **Net Property Plant & Equipment** | $41,358 |
| | |
| **Other Assets** | |
| Goodwill | $0 |
| Trademark | $100 |
| Investments | $0 |
| **Total Other Assets** | $100 |
| | |
| **Total Assets** | $515,709 |
| | |
| **Current Liabilities** | |
| Accounts Payable | $0.00 |
| Credit Cards Payable | $0.00 |
| Notes Payable, Current Portion | $0.00 |
| **Total Current Liabilities** | $0.00 |
| | |
| **Long-term Liabilities** | |
| Notes Payable, less Current Portion | $492,497 |
| Deferred Income Taxes | $0.00 |
| **Total Long-term Liabilities** | $492,497 |
| | |
| **Total Liabilities** | $492,497 |
| | |
| **Shareholders Equity** | |
| Members Shares | $1,000 |
| Additional Paid-in-Capital | $22,094 |
| Retained Earnings - Prior | $2,725 |
| Retained Earnings - Current | -$2,607 |
| **Total Members Equity** | $23,212 |
| | |
| **Total Liabilities & Shareholders Equity** | $515,709 |

# ATH Sports Nutrition LLC
## Profit and Loss
### June 30, 2023

|  | Total |
|---|---:|
| **Income** | |
|   **4100 Retail Sales** | |
|     4110 Shopify | 83,636.42 |
|     4160 Amazon | 2,309.94 |
|     4175 Refunds | -505.74 |
|     4190 Shopify Discounts | -4,672.45 |
|   **Total 4100 Retail Sales** | **$ 80,768.17** |
|   4200 Wholesale | **$ 7,311.00** |
| **Total Income** | **$ 88,079.17** |
| **Cost of Goods Sold** | |
|   5000 Cost of Goods Sold | 21,943.00 |
|   5005 Outbound Postage | 184.74 |
|   5015 Outbound Postage - RSL | 15,890.88 |
| **Total Cost of Goods Sold** | **$ 38,018.62** |
| **Gross Profit** | **$ 50,060.55** |
| **Expenses** | |
|   **6005 Advertising** | |
|     6005.02 Google | 7,370.97 |
|     6005.03 Facebook | 19,236.46 |
|     6005.04 Printable/Agencies | 4,900.00 |
|   **Total 6005 Advertising** | **$ 31,507.43** |
|   **6015 Merchant Fees** | |
|     6017 Amazon Fees | 219.48 |
|     6020 QuickBooks payments Fees | 3.38 |
|     6021 Shopify Fees | 2,436.44 |
|     6023 Stripe Fees | 401.09 |
|   **Total 6015 Merchant Fees** | **$ 3,060.39** |
|   6250 Contractors | 6,875.00 |
|   6400 Dues & Subscriptions | 297.00 |
|   6480 Legal & Professional | 1,053.67 |
|   6520 Office Supplies & Software | 2,376.46 |
|   6560 Fulfillment & Storage | 7,154.07 |
|   6710 Telephone & Internet | $ 343.52 |
| **Total Expenses** | **$ 52,667.54** |
| **Net Operating Income** | **-$ 2,606.99** |

# ATH Sports Nutrition LLC
## Reconciliation Report
### Period Ending June 30, 2023

REMARKS

| Cash on hand as reported on bank statements | Account | |
|---|---|---|
| | FHB Operating Account x8728 | $1,608.05 |
| | FHB Subchapter V Trustee x4167 | $200.00 |
| | FHB Tax Account x2801 | $200.00 |
| | CPB x7496 | $0.00 |
| | HSFCU x6023 | $0 |
| | MERC x7708 | $36,502.87 |
| | Total | $38,510.92 |
| **Checks Outstanding** | | $0.00 |
| **Ending Cash On Hand** | | $38,510.92 |

**In re ATH Sports Nutrition LLC**
**Case No. 23-00362**

<u>**Exhibit A**</u>

**Question 5 Have you deposited all the receipts for your business into debtor in possession (DIP) accounts?**

Answer to Question 5 No, there is a de minimis amount of Debtor funds consistently held in the Mercury account, in accordance with the terms of the Final Order Authorizing Debtor to Honor Existing Merchant Service Agreements, and Authorizing Continued Use of Existing Bank Account D.I. 40. During the reporting period, the Debtor encountered technical difficulties in transitioning the electronic deposits into the DIP Operating account, which took time to resolve.

**In re ATH Sports Nutrition LLC**
**Case No. 23-00362**

<u>**Exhibit B**</u>

**Question 10. Do you have any bank accounts open other than the DIP accounts?**

Answer to Question 10 Yes. Mercury account is a non-DIP account. The account at Mercury is solely used by the Debtor to make ACH transfers and wires to pay its vendors and suppliers (most of whom are scattered throughout the United States). *See Interim Order Authorizing Debtor to Honor Existing Merchant Service Agreements, and Authorizing Continued Use of Existing Bank Account* D.I. 40.

**In re ATH Sports Nutrition LLC**
**Case No. 23-00362**

**Exhibit C**

| Date | ReferenceNo. | Type | Description | Debit | Credit | CheckNumber | Balance |
|------|--------------|------|-------------|-------|--------|-------------|---------|
| 6/12/2023 | | CREDIT | DEPOSIT - MOBILE | | 1342.5 | 0 | 1608.05 |

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 78   Filed  08/14/23    Page 26 of 33

| Date (UTC) | Description | Amount | Status | Source Account | Bank Description | Reference | Note | Last Four Digits | Name On Card |
|---|---|---|---|---|---|---|---|---|---|
| 6/30/2023 | CROESUS DIGITAL MARKETING LIMITED | $ 100.00 | Sent | Mercury Checking | | | | | |
| 6/30/2023 | POND FITNESS LIM | $ 1,688.40 | Sent | Mercury Checking | | | | | |
| 6/30/2023 | shopify | $ 3,460.51 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/30/2023 | STRIPE | $ 899.29 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/29/2023 | STRIPE | $ 278.57 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/29/2023 | shopify | $ 1,294.29 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/29/2023 | shopify AFRM | $ 95.68 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/28/2023 | STRIPE | $ 1,461.72 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/28/2023 | shopify | $ 2,318.52 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/27/2023 | Vitamin Shoppe | $ 1,980.00 | Sent | Mercury Checking | Check Deposit From Vitamin Shoppe | | 329264 | | |
| 6/27/2023 | AFRM | $ 201.66 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/27/2023 | AFRM | $ 201.53 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/27/2023 | AFRM | $ 52.82 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/27/2023 | shopify | $ 5,945.81 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/27/2023 | STRIPE | $ 319.27 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/26/2023 | STRIPE | $ 94.49 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/26/2023 | AFRM | $ 154.73 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/26/2023 | shopify | $ 2,484.94 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/23/2023 | AMAZON.C6Y7M9YMG | $ 1,094.80 | Sent | Mercury Checking | AMAZON.C6Y7M9YMG_PAYMENTS | | | | |
| 6/23/2023 | shopify | $ 2,441.66 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/23/2023 | STRIPE | $ 190.73 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/23/2023 | AFRM | $ 256.91 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/22/2023 | STRIPE | $ 1,858.37 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/22/2023 | shopify | $ 2,197.36 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/21/2023 | STRIPE | $ 255.45 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/21/2023 | shopify | $ 9,833.24 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/21/2023 | AFRM | $ 1,287.23 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/21/2023 | AFRM | $ 81.00 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/21/2023 | AFRM | $ 113.31 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/21/2023 | AFRM | $ 101.46 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/20/2023 | Unknown | $ 1,875.00 | Sent | Mercury Checking | | | UNABLE TO APPLY | | |
| 6/20/2023 | Mercury IO Cashback | $ 128.15 | Sent | Mercury Checking | | | | | |
| 6/20/2023 | shopify | $ 2,768.51 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/20/2023 | STRIPE | $ 439.78 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/19/2023 | Mercury IO Cashback | $ 75.00 | Sent | Mercury Checking | | | | | |
| 6/16/2023 | STRIPE | $ 448.54 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/16/2023 | shopify | $ 1,795.93 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/16/2023 | shopify AFRM | $ 223.69 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/15/2023 | Mercury IO Cashback | $ 90.00 | Sent | Mercury Checking | | | | | |
| 6/15/2023 | Shopify | $ 2,630.56 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/15/2023 | STRIPE | $ 958.81 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/15/2023 | Shoppayinst Afrm | $ 52.82 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/14/2023 | Amazon | $ 314.63 | Sent | Mercury Checking | AMAZON.CC4F5EMP5_PAYMENTS | | | | |
| 6/14/2023 | STRIPE | $ 693.94 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/14/2023 | Shoppayinst Afrm | $ 146.10 | Sent | Mercury Checking | SHOPPAYINST AFRM_AutoPay | | | | |
| 6/14/2023 | Shopify | $ 3,477.76 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/14/2023 | Shoppayinst Afrm | $ 95.07 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/13/2023 | Mercury IO Cashback | $ 75.00 | Sent | Mercury Checking | | | | | |
| 6/13/2023 | STRIPE | $ 320.96 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/13/2023 | Shopify | $ 5,233.45 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/13/2023 | Shoppayinst Afrm | $ 303.27 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/13/2023 | Shoppayinst Afrm | $ 202.12 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/13/2023 | Amazon | $ 362.26 | Sent | Mercury Checking | AMAZON.CHHNM8KQP_PAYMENTS | | | | |
| 6/13/2023 | Shoppayinst Afrm | $ 298.49 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/13/2023 | Mercury IO Cashback | $ 75.00 | Sent | Mercury Checking | | | | | |
| 6/12/2023 | Shopify | $ 1,390.09 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/12/2023 | STRIPE | $ 149.07 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |
| 6/12/2023 | Shoppayinst Afrm | $ 112.09 | Sent | Mercury Checking | SHOPPAYINST AFRM_PAYMENTS | | | | |
| 6/9/2023 | Shopify | $ 2,912.98 | Sent | Mercury Checking | shopify_TRANSFER | | | | |
| 6/9/2023 | STRIPE | $ 363.21 | Sent | Mercury Checking | STRIPE_TRANSFER | | | | |

| Date (UTC) | Description | Amount | Status | Source Account | Bank Description | Reference | Note | Last Four Digits | Name On Card |
|---|---|---|---|---|---|---|---|---|---|
| 6/8/2023 | Shopify | $ 2,757.66 | Sent | Mercury Checking | shopify, TRANSFER | | | | |
| 6/8/2023 | STRIPE | $ 254.65 | Sent | Mercury Checking | STRIPE, TRANSFER | | | | |
| 6/8/2023 | Shoppayinst Afrm | $ 164.20 | Sent | Mercury Checking | SHOPPAYINST AFRM, PAYMENTS | | | | |
| 6/7/2023 | STRIPE | $ 922.05 | Sent | Mercury Checking | STRIPE, TRANSFER | | | | |
| 6/7/2023 | Shopify | $ 2,765.87 | Sent | Mercury Checking | shopify, TRANSFER | | | | |
| 6/7/2023 | Shoppayinst Afrm | $ 115.62 | Sent | Mercury Checking | SHOPPAYINST AFRM, PAYMENTS | | | | |
| 6/6/2023 | Mercury IO Cashback | $ 45.00 | Sent | Mercury Checking | | | | | |
| 6/6/2023 | STRIPE | $ 366.19 | Sent | Mercury Checking | STRIPE, TRANSFER | | | | |
| 6/6/2023 | Shopify | $ 5,508.50 | Sent | Mercury Checking | shopify, TRANSFER | | | | |
| 6/6/2023 | Shoppayinst Afrm | $ 218.11 | Sent | Mercury Checking | SHOPPAYINST AFRM, PAYMENTS | | | | |
| 6/6/2023 | Shoppayinst Afrm | $ 52.82 | Sent | Mercury Checking | SHOPPAYINST AFRM, PAYMENTS | | | | |
| 6/5/2023 | Fhbank Ck Webxfr | $ 100.00 | Sent | Mercury Checking | FHBANK CK WEBXFR, P2P | | | | |
| 6/5/2023 | STRIPE | $ 811.84 | Sent | Mercury Checking | STRIPE, TRANSFER | | | | |
| 6/5/2023 | Shopify | $ 2,370.38 | Sent | Mercury Checking | shopify, TRANSFER | | | | |
| 6/5/2023 | Amazon | $ 538.25 | Sent | Mercury Checking | AMAZON.CGTG06X0Q, PAYMENTS | | | | |
| 6/5/2023 | Shoppayinst Afrm | $ 121.39 | Sent | Mercury Checking | SHOPPAYINST AFRM, PAYMENTS | | | | |
| 6/2/2023 | Mercury IO Cashback | $ 75.00 | Sent | Mercury Checking | | | | | |
| 6/2/2023 | Shopify | $ 2,498.43 | Sent | Mercury Checking | shopify, TRANSFER | | | | |
| 6/2/2023 | STRIPE | $ 241.24 | Sent | Mercury Checking | STRIPE, TRANSFER | | | | |
| 6/2/2023 | Shoppayinst Afrm | $ 121.91 | Sent | Mercury Checking | SHOPPAYINST AFRM, PAYMENTS | | | | |
| 6/1/2023 | STRIPE | $ 1,620.03 | Sent | Mercury Checking | STRIPE, TRANSFER | | | | |
| 6/1/2023 | Shopify | $ 4,583.94 | Sent | Mercury Checking | shopify, TRANSFER | | | | |
| 6/1/2023 | Shoppayinst Afrm | $ 456.24 | Sent | Mercury Checking | SHOPPAYINST AFRM, PAYMENTS | | | | |
| 6/1/2023 | Mercury IO Cashback | $ 71.73 | Sent | Mercury Checking | | | | | |

**In re ATH Sports Nutrition LLC**
**Case No. 23-00362**

**Exhibit D**

| Date | ReferenceNo. | Type | Description | Debit | Credit | CheckNumber | Balance |
|---|---|---|---|---|---|---|---|
| 6/1/2023 | | DEBIT | PREAUTHORIZED TRNSFR CHFIGR CK WEBXFR TRANSFER * 0123 * 3755 ATH SPORTS NUTRITI | | 100 | | 265.55 |

U.S. Bankruptcy Court - Hawaii   #23-00362   Dkt # 78   Filed  08/14/23   Page 30 of 33

| Date (UTC) | Description | Status | Amount | Source Account | Bank Description | Reference | Note |
|---|---|---|---|---|---|---|---|
| 6/30/2023 | Twilio | Sent | $ (10.14) | Mercury Checking | TWILIO INC | | |
| 6/29/2023 | Facebook | Sent | $ (942.41) | Mercury Checking | FACEBK 8LTVQ8EG2 | | |
| 6/29/2023 | Vitalabs | Sent | $ (2,231.10) | Mercury Checking | VITALABS INC | | |
| 6/29/2023 | Vitalabs | Sent | $ (2,231.10) | Mercury Checking | VITALABS INC | | |
| 6/29/2023 | Vitalabs | Sent | $ (2,231.10) | Mercury Checking | VITALABS INC | | |
| 6/29/2023 | UPS | Sent | $ (19.68) | Mercury Checking | UPS*BILLING CENTER | | |
| 6/29/2023 | UPS | Sent | $ (145.08) | Mercury Checking | UPS*BILLING CENTER | | |
| 6/29/2023 | Amazon | Sent | $ (47.79) | Mercury Checking | AMZN Mktp US | | |
| 6/28/2023 | Facebook | Sent | $ (942.41) | Mercury Checking | FACEBK HX6S367EG2 | | |
| 6/27/2023 | Facebook | Sent | $ (942.41) | Mercury Checking | FACEBK KYCGMQ3EG2 | | |
| 6/26/2023 | Facebook | Sent | $ (942.41) | Mercury Checking | FACEBK T2X26P7EG2 | | |
| 6/26/2023 | Facebook | Sent | $ | Mercury Checking | FACEBK 9PWYSB6EG2 | | |
| 6/24/2023 | Klaviyo | Sent | $ (459.80) | Mercury Checking | KLAVIYO INC. SOFTWARE | | |
| 6/24/2023 | Blank Canvas | Sent | $ (1,689.49) | Mercury Checking | SQ *BLANK CANVAS | | |
| 6/23/2023 | Facebook | Sent | $ (942.41) | Mercury Checking | FACEBK 79FFX428EG2 | | |
| 6/23/2023 | 7965A WEBGISTIX | Sent | $ (2,675.00) | Mercury Checking | 7965A WEBGISTIX, CASH C&D | | |
| 6/23/2023 | SHOPIFY CAPITAL | Sent | $ (352.87) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/23/2023 | Taxjar | Sent | $ (103.67) | Mercury Checking | TAXJAR.COM | | |
| 6/23/2023 | Facebook | Sent | $ (1,474.01) | Mercury Checking | FACEBK 9GZCG57EG2 | | |
| 6/22/2023 | SHOPIFY CAPITAL | Sent | $ (462.65) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/22/2023 | SHOPIFY CAPITAL | Sent | $ (453.20) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/22/2023 | SHOPIFY CAPITAL | Sent | $ (380.28) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/22/2023 | SHOPIFY CAPITAL | Sent | $ (338.00) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/22/2023 | SHOPIFY CAPITAL | Sent | $ (405.46) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/21/2023 | Facebook | Sent | $ (942.60) | Mercury Checking | FACEBK EMBJXJXEG2 | | |
| 6/20/2023 | Mercury Credit | Sent | $ (8,542.70) | Mercury Checking | | | |
| 6/20/2023 | SHOPIFY CAPITAL | Sent | $ (439.43) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/20/2023 | Divvy Victorine | Sent | $ (2,500.00) | Mercury Checking | Send Money transaction initiated on Mercury | via mercury.com, Contractor/Customer service | |
| 6/16/2023 | Mercury Credit | Sent | $ (5,000.00) | Mercury Checking | | | |
| 6/16/2023 | Belmark | Sent | $ (5,590.80) | Mercury Checking | Send Money transaction initiated on Mercury | Invoice 286270 Job #1652142,Vendor Labels | Build Bags |
| 6/16/2023 | Gankia Nutritionals | Sent | $ (2,759.54) | Mercury Checking | Send Money transaction initiated on Mercury | for invoice 952257106 credit ATH SPORTS NUTRITION LLC; Vendor Flavors | Build Flavors- Invoice 952257106 |
| 6/16/2023 | SBA EIDL LOAN | Sent | $ (2,505.00) | Mercury Checking | SBA EIDL LOAN PAYMENT | 7854777400 | |
| 6/16/2023 | SHOPIFY CAPITAL | Sent | $ (339.17) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/16/2023 | 7965A WEBGISTIX | Sent | $ (15,419.38) | Mercury Checking | 7965A WEBGISTIX, CASH C&D | | |
| 6/16/2023 | Kennedy Augala | Sent | $ 1,875.00 | Mercury Checking | Send Money transaction initiated on Mercury | From ATH SPORTS NUTRITION LLC, Contractor/Customer service | Wrong account number |
| 6/15/2023 | Mercury Credit | Sent | $ (6,000.00) | Mercury Checking | | | |
| 6/15/2023 | Shopify Capital | Sent | $ (488.86) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/14/2023 | Shopify Capital | Sent | $ (531.78) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/14/2023 | Shopify Capital | Sent | $ (307.43) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/14/2023 | Shopify Capital | Sent | $ (282.26) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/14/2023 | Verizon | Sent | $ (100.17) | Mercury Checking | VZWRLESS VW, VZW WEBPAY | | |
| 6/14/2023 | Verizon | Sent | $ (133.37) | Mercury Checking | VZWRLESS VW, VZW WEBPAY | | |
| 6/13/2023 | Mercury Credit | Sent | $ (5,000.00) | Mercury Checking | | | |
| 6/13/2023 | Shopify Capital | Sent | $ (328.25) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/13/2023 | Mercury Credit | Sent | $ (5,000.00) | Mercury Checking | | | |
| 6/12/2023 | Mercury Credit | Sent | $ (228.66) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/9/2023 | Rakuten Super Logistics | Sent | $ (3,043.16) | Mercury Checking | 7965A WEBGISTIX, CASH C&D | | |
| 6/9/2023 | Shopify Capital | Sent | $ (444.31) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/8/2023 | Shopify Capital | Sent | $ (415.59) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/7/2023 | Shopify Capital | Sent | $ (269.12) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/7/2023 | Shopify Capital | Sent | $ (301.63) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/7/2023 | Shopify Capital | Sent | $ (420.56) | Mercury Checking | SHOPIFY CAPITAL, SHOPIFY | | |
| 6/6/2023 | Mercury Credit | Sent | $ (3,000.00) | Mercury Checking | | | |
| 6/6/2023 | Rakuten Super Logistics | Sent | $ (6,843.22) | Mercury Checking | 7965A WEBGISTIX, CASH C&D | | |
| 6/6/2023 | Shopify Capital | Sent | $ (344.57) | Mercury Checking | SHOPIFY CAPITAL, RF64BZ4P | | |
| 6/5/2023 | Diamond Logistics Group | Sent | $ (6,745.18) | Mercury Checking | Send Money transaction initiated on Mercury | From ATH SPORTS NUTRITION LLC for invoice MN0408 | |
| 6/5/2023 | Shopify Capital | Sent | $ (417.85) | Mercury Checking | SHOPIFY CAPITAL, RR18FGGW | | |
| 6/2/2023 | Mercury Credit | Sent | $ (5,000.00) | Mercury Checking | | | |
| 6/2/2023 | Stuart Xam | Sent | $ (2,500.00) | Mercury Checking | Send Money transaction initiated on Mercury | From ATH SPORTS NUTRITION LLC via mercury.com | |
| 6/2/2023 | Gusto | Sent | $ (1,875.00) | Mercury Checking | GUSTO, CND 51IB70 | | |
| 6/2/2023 | Shopify Capital | Sent | $ (385.10) | Mercury Checking | SHOPIFY CAPITAL, RZ16RTKEF | | |
| 6/2/2023 | GUSTO | Sent | $ (2,500.00) | Mercury Checking | GUSTO, CND 51IB70 | | |
| 6/1/2023 | Shopify Capital | Sent | $ (681.42) | Mercury Checking | SHOPIFY CAPITAL, R7545DQE | | |
| 6/1/2023 | Shopify Capital | Sent | $ (499.33) | Mercury Checking | SHOPIFY CAPITAL, R2AMDRAGM | | |
| 6/1/2023 | Shopify Capital | Sent | $ (644.55) | Mercury Checking | SHOPIFY CAPITAL, R7EITPDAY | | |
| 6/1/2023 | Shopify Capital | Sent | $ (513.47) | Mercury Checking | SHOPIFY CAPITAL, RKHS2AAW | | |
| 6/1/2023 | Mercury Credit | Sent | $ (4,780.34) | Mercury Checking | | | |

**In re ATH Sports Nutrition LLC**
**Case No. 23-00362**

**Exhibit F**

ATH Sports Nutrition LLC
A/R Aging Summary
As of June 30, 2023

| | Current | 30-Jan | 31 - 60 | 61 - 90 | 91 and over | Total |
|---|---|---|---|---|---|---|
| Vitamin Shoppe | $ 5,136.00 | $ - | $ - | $ - | $ - | $ 5,136.00 |
| TOTAL | $ 5,136.00 | $ - | $ - | $ - | $ - | $ 5,136.00 |

Thursday, Jul 20, 2023 03:06:51 PM GMT-7

U.S. Bankruptcy Court - Hawaii #23-00362 Dkt # 78 Filed 08/14/23 Page 33 of 33

# EXHIBIT B

**ATH SPORTS NUTRITION LLC**
**Restructuring Plan**
**Petition Date 5/15/23**

| | Q4 2023 | Q1 2024 | Q2 2024 | Q3 2024 | Q4 2024 | Q1 2025 | Q2 2025 | Q3 2025 | Q4 2025 | Q1 2026 | Q2 2026 | Q3 2026 | Q4 2026 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | |
| Direct to Consumer | $294,000 | $360,000 | $330,000 | $340,000 | $330,000 | $432,000 | $396,000 | $408,000 | $396,000 | $518,400 | $475,200 | $489,600 | $475,200 |
| Amazon | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Wholesale | $9,000 | $13,000 | $13,000 | $13,000 | $12,500 | $15,600 | $15,600 | $15,600 | $15,600 | $18,720 | $18,720 | $18,720 | $18,000 |
| **Gross Sales** | $303,000 | $373,000 | $343,000 | $353,000 | $342,500 | $447,600 | $411,600 | $423,600 | $411,000 | $537,120 | $493,920 | $508,320 | $493,200 |
| **Cash Outflows** | | | | | | | | | | | | | |
| Raw Materials | $0 | $55,000 | $55,000 | $55,000 | $55,000 | $80,000 | $80,000 | $80,000 | $80,000 | $110,000 | $110,000 | $110,000 | $110,000 |
| Packaging Components | $0 | $8,938 | $8,938 | $8,938 | $8,938 | $13,000 | $13,000 | $13,000 | $13,000 | $17,875 | $17,875 | $17,875 | $17,875 |
| Contract Manufacturer | $0 | $17,188 | $17,188 | $17,188 | $17,188 | $25,000 | $25,000 | $25,000 | $25,000 | $34,375 | $34,375 | $34,375 | $34,375 |
| **Total Manufacturing Outflows** | $0 | $81,125 | $81,125 | $81,125 | $81,125 | $118,000 | $118,000 | $118,000 | $118,000 | $162,250 | $162,250 | $162,250 | $162,250 |
| **Advertising Expenses** | | | | | | | | | | | | | |
| Facebook Ads | $88,200 | $88,200 | $88,200 | $88,200 | $88,200 | $105,840 | $105,840 | $105,840 | $105,840 | $127,008 | $127,008 | $127,008 | $127,008 |
| Google Ads | $24,000 | $24,000 | $24,000 | $24,000 | $24,000 | $28,800 | $28,800 | $28,800 | $28,800 | $34,560 | $34,560 | $34,560 | $34,560 |
| Amazon Ads | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Advertising** | $112,200 | $112,200 | $112,200 | $112,200 | $112,200 | $134,640 | $134,640 | $134,640 | $134,640 | $161,568 | $161,568 | $161,568 | $161,568 |
| **Cost of Delivery** | | | | | | | | | | | | | |
| 3PL Warehousing | $15,150 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Outbound Freight | $30,300 | $37,300 | $34,300 | $35,300 | $34,250 | $44,760 | $41,160 | $42,360 | $41,100 | $53,712 | $49,392 | $50,832 | $49,320 |
| Merchant Fees | $9,090 | $11,190 | $10,290 | $10,590 | $10,275 | $13,428 | $12,348 | $12,708 | $12,330 | $16,114 | $14,818 | $15,250 | $14,796 |
| Packaging Supplies | $1,500 | $1,119 | $1,029 | $1,059 | $1,028 | $1,343 | $1,235 | $1,271 | $1,233 | $1,611 | $1,482 | $1,525 | $1,480 |
| **Total Cost of Delivery** | $56,040 | $49,609 | $45,619 | $46,949 | $45,553 | $59,531 | $54,743 | $56,339 | $54,663 | $71,437 | $65,691 | $67,607 | $65,596 |
| **Operating Expenses** | | | | | | | | | | | | | |
| Marketing | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 |
| Warehouse | $0 | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 |
| Labor | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 |
| Software | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 |
| Insurance | $0 | $0 | $0 | $8,000 | $0 | $0 | $0 | $8,000 | $0 | $0 | $0 | $8,000 | $0 |
| Administrative Claims | $40,048 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Priority Tax Claim | $5,476 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Taxes - GET | $6,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Moving Expense | $450 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Telephone Expense | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| SBA Loan Payments | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 | $7,503 |
| Ch. 11 Professional Fees | $76,336 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| SubChapter V Trustee | $9,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Accounting Fees | $2,100 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 |
| Other Overhead | $0 | $41,713 | $15,703 | $16,373 | $17,270 | $47,076 | $15,864 | $18,268 | $17,344 | $53,512 | $16,058 | $20,542 | $15,433 |
| **Total Operating Expenses** | $200,912 | $125,066 | $99,056 | $107,726 | $100,623 | $130,429 | $99,217 | $109,621 | $100,697 | $136,865 | $99,411 | $111,895 | $98,786 |
| **Total Cash Outflows** | $389,152 | $368,000 | $338,000 | $348,000 | $339,501 | $442,600 | $406,600 | $418,600 | $408,000 | $532,120 | $488,920 | $503,320 | $488,200 |
| **Net Cash Flow** | -$86,152 | $5,000 | $5,000 | $5,000 | $3,000 | $5,000 | $5,000 | $5,000 | $3,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| **Disposable Income** | -$86,152 | $5,000 | $5,000 | $5,000 | $3,000 | $5,000 | $5,000 | $5,000 | $3,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| **Creditor Outflow** | $0 | $5,000 | $5,000 | $5,000 | $3,000 | $5,000 | $5,000 | $5,000 | $3,000 | $5,000 | $5,000 | $5,000 | $5,000 |

U.S. Bankruptcy Court - Hawaii #23-00362 Dkt # 105 Filed 09/25/23 Page 97 of 99

**Exhibit C**

### *Debtor's Estimated Liquidation Value of Assets*

**Assets**

| | |
|---|---|
| a. Cash on hand | $38,511 |
| b. Accounts receivable | $7,311 |
| c. Inventory | $42,843 |
| d. Office furniture & equipment | $1,393 |
| e. Machinery & equipment | $0 |
| f. Automobiles | $0 |
| g. Building & Land | $0 |
| h. Customer list | $0 |
| i. Investment property (such as stocks, bonds or other financial assets) | $0 |
| j. Lawsuits or other claims against third-parties | $0 |
| k. Other intangibles (such as avoiding powers actions) | $0 |

*Total Assets at Liquidation Value* — $90,058

**Less:**
Secured creditors' recoveries — $520,316.70
**Less:**
Chapter 7 trustee fees and expenses — $0
**Less:**
Chapter 11 Administrative Expenses — $
**Less:**
Priority claims, excluding Administrative Expense claims — $
[**Less:**
Debtor's claimed exemptions] — $

(1) Balance for unsecured claims — $-430,258.70

(2) Total dollar amount of unsecured claims — $767,610

*Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation: 0%* ____

*Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:  7.0%*